**Rex K. TRAVIS, Appellee,**

v.

**Bobby Jean TRAVIS, Appellant.**

No. 67851.

Supreme Court of Oklahoma.

July 3, 1990.

Robert J. Turner, Oklahoma City, for appellee.

Janet L. Cox, Oklahoma City, for appellant.

ALMA WILSON, Justice:

In this divorce action, the appellant (Wife) presents as her sole issue whether the property division was erroneous and inequitable because the trial court declined to consider the good will of the appellee's (Husband's) law practice as a marital asset. In a summary opinion the Court of Appeals, Division 2, affirmed the judgment of the trial court. Because this case is one of first impression, we granted certiorari.

At the time of trial, October, 1986, Husband was a 47–year–old lawyer who had been licensed to practice law in this state since 1962. The parties were married on May 21, 1960, and separated on May 19, 1985. The parties stipulated that the value of the marital estate would be set as of September 30, 1985. The controversy in this case revolves around the division of Husband's law practice. Wife is not contesting the support alimony award in this case.

The facts reveal that Husband's law library, office equipment and furnishings were valued at $41,150.80. The total indebtedness resulting from the law practice was $414,894.39. Husband testified that he was a sole practitioner in a contingent fee practice in which 95% of his cases were referred to him by other lawyers with whom he associated in the handling of plaintiff personal injury insurance claims. Both Husband and his expert witness testified that the only value of the law practice was the physical assets. Wife's expert witness testified that the value of the law practice, based upon projected income, was $750,000.00. The trial court ruled that the law practice had no other value than the physical assets and Husband, himself.

Title 60 O.S.1981, § 315 defines the "good will" of a business as "the expectation of a continued public patronage." The next section (60 O.S.1981, § 316) states that the good will of a business is property, transferable like any other. "The 'good will' value of any business is the value that results from the probability that old customers will continue to trade with an established concern." *Freeling v. Wood*, 361 P.2d 1061, 1063 (Okla.1961). Good will is

merely an intangible asset pertaining to an established business. *Rosen v. Martin,* 102 Okl. 65, 226 P. 577, 581 (1924).

As distinguished from tangible assets, intangibles have no intrinsic value, but do have a value related to the ownership and possession of tangible assets. Some intangibles, such as a trademark, trade name or patent, are related to an identifiable tangible asset. Goodwill, which is another intangible, is not. Often referred to as "the most 'intangible' of the intangibles," D. Kieso & J. Weygandt, *Intermediate Accounting* 570 (3d ed. 1980), goodwill is essentially reputation that will probably generate future business.

*Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1, 3 (1983). The Supreme Court of Missouri, En Banc, noted that "In addressing the question of the existence and value of goodwill in a professional context as mari-

tal property, the courts have not spoken with a uniform voice." *Hanson v. Hanson,* 738 S.W.2d 429, 433 (Mo.1987). Acknowledging that the states were split on the question of dividing the good will of a law practice as a marital asset,[1] the Court of Appeals of Tennessee held that professional good will is not a divisible marital asset for the purpose of equitable distribution of a marital estate. *Smith v. Smith,* 709 S.W.2d 588 (Tenn.App.1985).

Even when courts agree that good will is divisible, trial courts apparently have trouble in placing a value on it in cases involving law practices. The appellate courts agree that good will is valued by comparing the actual earnings to the earnings which are expected based on a normal rate of return on an investment. *Dugan,* 457 A.2d at 5. The *Dugan* court conceded that determining the value of good will in a law

---

**1.** The following cases show the almost equal split between the states in determining whether or not to recognize good will in a law practice for the purpose of dividing the marital estate.

Refusing to recognize good will for the purpose of division: *Richmond v. Richmond,* 779 P.2d 1211 (Alaska 1989) (sole practitioner), *Thompson v. Thompson,* 546 So.2d 99 (Fla.Dist. Ct.App.1989) (partnership), *Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833 (1988) (sole practitioner), *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986), *allocatur denied* 516 Pa. 631, 533 A.2d 90 (1987) (sole practitioner), *Smith v. Smith,* 709 S.W.2d 588 (Tenn.Ct.App. 1985) (partnership), *Hirsch v. Hirsch,* 770 S.W.2d 924 (Tex.Ct.App.1989) (sole practitioner), *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (Ct.App.1981) (partnership).

Recognizing good will for the purpose of division: *Molloy v. Molloy,* 158 Ariz. 64, 761 P.2d 138 (Ct.App.1988), *review denied,* 158 Ariz. 64, 761 P.2d 138 (App.1988) (professional corporation), *In re Marriage of Green,* 213 Cal.App.3d 14, 261 Cal.Rptr. 294 (1989) (sole practitioner), *E.E.C. v. E.J.C.,* 457 A.2d 688 (Del.Super.Ct.1983) (sole practitioner), *In re Marriage of Stone,* 155 Ill.App.3d 62, 107 Ill.Dec. 747, 507 N.E.2d 900 (1987), *cert. denied,* 116 Ill.2d 558, 113 Ill.Dec. 318, 515 N.E.2d 127 (1987), (partnership), *Dugan v. Dugan,* 92 N.J. 423, 457 A.2d 1 (1983) (sole practitioner), *Hertz v. Hertz,* 99 N.M. 320, 657 P.2d 1169 (1983) (professional corporation), *Stolowitz v. Stolowitz,* 106 Misc.2d 853, 435 N.Y. S.2d 882 (N.Y.Sup.Ct.1980) (law firm), *McLean v. McLean,* 323 N.C. 543, 374 S.E.2d 376 (1988) (professional corporation), *In re Marriage of Brooks,* 51 Wash.App. 882, 756 P.2d 161 (1988) (partnership).

The following states, in medical and dental practices, have held that they do not recognize good will as a divisible marital asset: *Antolik v. Harvey,* 761 P.2d 305, 76 A.L.R.4th 1013 (Haw. Ct.App.1988) (sole medical practice), *In re Marriage of Hogeland,* 448 N.W.2d 678 (Iowa Ct. App.1989) (dental corporation), *Powell v. Powell,* 231 Kan. 456, 648 P.2d 218 (1982) (sole medical practice), *Pearce v. Pearce,* 482 So.2d ·108 (La.Ct.App.1986), *cert. denied,* 484 So.2d 140 (1986) (medical corporation), *Donahue v. Donahue,* 299 S.C. 353, 384 S.E.2d 741 (1989) (sole dental practice).

The following states, in medical and dental practices, have recognized good will as a divisible marital asset: *Wilson v. Wilson,* 294 Ark. 194, 741 S.W.2d 640 (1987) (recognizes good will but denies it for this sole medical practice), *In re Marriage of Nichols,* 43 Colo.App. 383, 606 P.2d 1314 (1979) (sole dental practitioner), *Porter v. Porter,* 526 N.E.2d 219 (Ind.Ct.App.1988) (medical corporation), *Clark v. Clark,* 782 S.W.2d 56 (Ky.Ct.App.1990) (medical corporation), *Roth v. Roth,* 406 N.W.2d 77 (Minn.App. 1987) (recognized good will but found too speculative in this sole medical practice), *Hanson v. Hanson,* 738 S.W.2d 429 (Mo.1987) (medical partnership), *In re Marriage of Hull,* 219 Mont. 480, 712 P.2d 1317 (1986) (sole medical practice), *Taylor v. Taylor,* 222 Neb. 721, 386 N.W.2d 851 (1986) (recognizes good will but denies it for this sole medical practitioner), *Ford v. Ford,* 782 P.2d 1304 (Nev.1989) (sole medical practice), *Kahn v. Kahn,* 42 Ohio App.3d 61, 536 N.E.2d 678 (1987) (sole medical practice), *Marriage of Steinbrenner,* 60 Or.App. 106, 652 P.2d 845 (1982) (sole medical practice), *Sorensen v. Sorensen,* 769 P.2d 820 (Utah Ct.App.1989) (sole dental practice).

practice presented difficulties, especially since the individual practitioner would be forced to pay the ex-spouse "tangible" dollars for an intangible asset at a value arrived at on the basis of some uncertain elements. *Dugan*, 457 A.2d at 7. That court goes into considerable detail in discussing the definition and method of establishing the value of good will in a law practice.[2] The trial court was reversed for incorrect determination. Yet after detailing the method, the court added that other approaches equally or more compelling may be used and the court did not intend by the suggestions made in the opinion to preclude the use of other approaches.

The Supreme Court of New Mexico held that the good will in husband's law firm should have been set at $1.00 because of the uncontradicted testimony that all previous sales of the law firm's stock had been on a cash basis and no value was ever attributed to good will other than the $1.00 amount provided for in the stock subscription agreement. *Hertz v. Hertz*, 99 N.M. 320, 657 P.2d 1169 (1983). The *Hertz* court defined good will as "the difference between the total value of the professional association or corporation and the aggregate value of its separable resources and property rights, less liabilities." *Hertz*, 657 P.2d at 1173. The court listed factors to consider when determining good will: "[T]he length of time the professional has been practicing, his comparative success, his age and health, and any past profits of the practice. Attention should also be given to the physical and fixed resources of the practice." *Hertz*, 657 P.2d at 1174, citations omitted. Like the *Dugan* court, New Mexico also stated that the list of factors was not exclusive because each case depended upon its own particular facts and circumstances and the court recognized the difficulty in ascertaining the existence and value of good will in a law practice. *Hertz*, 657 P.2d at 1174. Even after recognizing good will and setting factors for determining good will in a law practice, the court stated that it found itself in agreement with a statement made by the Wis-

**2.** The *Dugan* court stated:

"One appropriate method to determine the value of goodwill of a law practice can be accomplished by fixing the amount by which the attorney's earnings exceed that which would have been earned as an employee by a person with similar qualifications of education, experience and capability. This is a fair manner in which to resolve the goodwill constituent. An attorney who earns $35,000 per year as an employee would, as any employee, not have goodwill properly ascribable to his employment. The same attorney earning a net income of the same amount from his individual practice should likewise not be considered to have property consisting of goodwill in ascertaining the value of his practice. *See Levy v. Levy*, [164 N.J.Super. 542, 397 A.2d 374 (Ch.Div.1978)].

"The court should first ascertain what an attorney of comparable experience, expertise, education and age would be earning as an employee in the same general locale. The effort that the practitioner expends on his law practice should not be overlooked when comparing his income to that of the hypothetical employee. A sole practitioner who, for example, works a regular sixty-hour week may have a significantly greater income than an employee who regularly works a forty-hour week, and the income may be due to greater productivity rather than the realization of income on the sole practitioner's goodwill. Next, the attorney's net income before federal and state income taxes for a period of years, preferably five, should be determined and averaged. The actual average should then be compared with the employee norm. If the attorney's actual average realistically exceeds the total of (1) the employee norm and (2) a return on the investment in the physical assets, the excess would be the basis for evaluating goodwill.

"This excess is subject to a capitalization factor. The capitalization factor is generally perceived as the number of years of excess earnings a purchaser would be willing to pay for in advance in order to acquire the goodwill. 2 J. Bonbright, *Valuation of Property* 731 (1937). The minimum capitalization factor is zero. The precise capitalization factor would depend on other evidence. Such evidence could consist of a comparison of capitalization factors used to measure goodwill in other professions, such as medicine or dentistry, adjusted, however, for ingredients peculiar to law, such as the inability to sell the practice and nonavailability of a restrictive covenant. The age of a lawyer may be particularly important because a sole practitioner's goodwill would probably terminate upon death, contrary to that of a doctor. *See Tessmar v. Grosner*, 23 N.J. 193, 200–01, 128 A.2d 467 (1957); ABA Comm. on Professional Ethics, Formal Op. 266 (1945); Note, *supra*, at 614. [Footnote omitted.] Subject to such adjustments, the method used in a comparable profession may be applied and a figure close to the true worth of the law practice's goodwill may be obtained." *Dugan*, 457 A.2d at 9–10.

consin Court of Appeals in *Holbrook v. Holbrook*, 103 Wis.2d 327, 309 N.W.2d 343, 355 (Wis.Ct.App.1981):

> There is a disturbing inequity in compelling a professional practitioner to pay a spouse a share of intangible assets at a judicially determined value that could not be realized by a sale or another method of liquidating value.

*Hertz*, 657 P.2d at 1174.

The *Holbrook* Court determined that no value could be set on the good will of the husband's law firm and vacated the trial court's valuation of the partnership. The court found that the good will or reputation of the partnership was reflected in the husband's substantial salary which had been considered in setting the family support award. The court reasoned that treating the good will of the law firm as a separate divisible asset would constitute "double counting" and that if circumstances warranted future amendment of the family support award, Wisconsin law provided a method of so doing. *Holbrook*, 309 N.W.2d at 355.

A similar case is *Beasley v. Beasley*, 359 Pa.Super. 20, 518 A.2d 545 (1986), *allocatur denied*, 516 Pa. 631, 533 A.2d 90 (1987). The *Beasley* court reasoned in discussing whether or not a sole proprietorship law practice had a good will value:

> The good will of a sole proprietorship is related only to his future earnings, since an actual sale produces no value. To assess a value on future productivity and to award a proportionate amount to the spouse is akin to making a lump sum alimony payment since it is based on future earnings of the paying spouse. If, in addition to this payment, alimony is awarded, there is, in effect, a double charge on the future income of the paying spouse. Even without an alimony award, a fixed sum, not having the designation as alimony, carries none of the flexibility of an alimony award derived from its modifiability and, therefore, may penalize the payor if he suffers reverses, unemployment or dies.

*Beasley*, 518 A.2d at 553. Concerning alimony, the court commented: "Permanent alimony, as support, is modifiable, and should the expectations vary either upward or downward, adjustments can be made by the court in an expeditious and reasonable manner." *Beasley*, 518 A.2d at 554.

In the case of *Prahinski v. Prahinski*, 75 Md.App. 113, 540 A.2d 833 (1988), the Maryland court took a position on the issue of good will which they termed a "third approach." Citing *Wilson v. Wilson*, 294 Ark. 194, 741 S.W.2d 640 (1987); and *Taylor v. Taylor*, 222 Neb. 721, 386 N.W.2d 851 (1986), the *Prahinski* court held that for professional good will to be marital property it must be a business asset having a value independent of the continued presence or reputation of any particular individual. "That is, it must be shown to be an asset distinct from, and thus not dependent on, the reputation or continued presence of the individual professional." *Prahinski*, 540 A.2d at 843. The trial court in this divorce case found Mr. Prahinki's law practice in which he was a sole practitioner, to have a value of $300,000. This amount consisted entirely of good will since the tangible physical assets were worth less than the liens thereon and the business bank accounts were separately valued. He appealed the award of $150,000 to his wife. The appellate court stated that 95 to 97 per cent of his practice involved real estate settlement. The court observed that if he were to terminate his activity, the lights would go out and the value of his practice would be extinguished. The court further observed that the practice was nontransferable since a lawyer's clients cannot be sold and the right to represent them can only be transferred with their express consent. The court reasoned that the good will associated with appellant's law practice is of the type entirely dependent upon his reputation and not true good will, that is, not an independent asset of a business. Accordingly, the court concluded that the value assigned by the trial court as good will was in reality a calculation of appellant's future earnings. *Prahinski*, 540 A.2d at 844. They noted that the prospect for future earnings is a proper consideration for alimony, but it is not marital property subject

to equitable distribution. *Prahinski*, 540 A.2d at 844.

The *Prahinski* case summarized the holdings of *Wilson* and *Taylor* as follows:

(1) Where goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of a business.

(2) If the goodwill depends on the continued presence of a particular individual, such good will [sic], by definition, is not a marketable asset distinct from the individual.

*Prahinski*, 540 A.2d at 843, citing *Wilson*, 741 S.W.2d at 647; *Taylor*, 222 Neb. at 731, 386 N.W.2d at 858.

This Court has previously found that a law practice can be considered jointly acquired property subject to division as part of a marital estate. *Ford v. Ford*, 766 P.2d 950, 952 (Okl.1988). In contrast to the physical assets of a law office, the reputation of the lawyer cannot be purchased by another seeking to acquire an established law practice. If Mr. Travis were to cease his practice of law, he would not be free to sell his files to a succeeding lawyer because such a sale would violate Rule 1.8(j) of the Rules of Professional Conduct which prohibits a lawyer acquiring a proprietary interest in a lawsuit. This general rule has its basis in common law champerty and maintenance. *See*, Comment, Rule 1.8. Mr. Travis would only be able to divide a fee with a succeeding lawyer depending upon the client's agreement to retain the succeeding lawyer, the client's agreement in writing to a fee division, both lawyers' assuming joint responsibility for the representation, and the total fee being reasonable. Rule 1.5, Rules of Professional Conduct, 5 O.S.Supp.1989, ch. 1, app. 3–A.

Establishing earning capacity is much less speculative than trying to establish a good will value of a law practice. Projected earnings can be considered in establishing support alimony which, unlike property division of good will, may be adjusted upward or downward at a later date. *See Nantz v. Nantz*, 749 P.2d 1137 (Okl.1988) construing 12 O.S.1981, § 1289 and its subsequent amendments, now recodified at 43 O.S.Supp.1989, § 134. Because Oklahoma law allows such an adjustment, and because law practices cannot be bought and sold as can other professional practices, we conclude that a consideration of the earning capacity of a lawyer and subsequent setting of support alimony based upon that earning capacity is more equitable than the speculative division of good will in the law practice of a sole practitioner.

We accordingly find that the law practice in the case at bar had no good will value for the purpose of dividing the property in this marital estate. Because the Wife did not appeal the award of support alimony, we do not address whether or not the award of support alimony was inadequate.

AFFIRMED.

HARGRAVE, C.J., and HODGES, LAVENDER, DOOLIN and SUMMERS, JJ., concur.

SIMMS, J., concurring in judgment: "I would hold that good will of a law practice, if any exists, would at most be only a factor used in determining the value of the law practice as a marital asset. *Ford v. Ford*, 766 P.2d 950 (Okla.1988)".

OPALA, V.C.J., disqualified.

KAUGER, J., recused.