Richard J. TRACZYK, Appellant,

v.

Kathleen M. TRACZYK, Appellee.

No. 78435.

Supreme Court of Oklahoma.

March 21, 1995.

John W. Gile, Oklahoma City, for appellant.

Thomas J. Daniel IV, Kirk & Chaney, Oklahoma City, for appellee.

SIMMS, Justice:

Richard J. Traczyk, plaintiff below, appeals the judgment of the district court granting a divorce to both parties, dividing the marital property and awarding custody, alimony and support. Mr. Traczyk (Husband) takes issue with the trial court's handling of the marital property, primarily the valuation of goodwill of the podiatry clinic he owns and an acceleration clause in the award of alimony in the event he fails to timely make an alimony payment to Kathleen M. Traczyk, defendant below (Wife). The Court of Appeals affirmed the trial court judgment. Certiorari was granted to consider the first impression question of whether it is proper to include goodwill of a medical *sole proprietorship* in valuing such proprietorship for purposes of marital property division.

Because we find goodwill in Husband's podiatry practice transferable to another podiatrist in the event Husband sells the practice, such goodwill may be included in the value of the podiatry practice in making an equitable marital property division, distinguishing *Mocnik v. Mocnik*, 838 P.2d 500 (Okla.1992). We treat only the issues raised on certiorari.

## FACTS

Husband is a doctor of podiatric medicine and Wife is a registered nurse. Both parties worked throughout the marriage with Wife changing to part-time employment in 1987. Husband's podiatry business operated through a wholly-owned professional corporation, the Bethany Foot Clinic.

The parties agreed to the division of all of their marital property except the Bethany

Foot Clinic and a coin collection not at issue. Wife presented expert evidence on the value of the clinic. The trial court accepted the expert's opinion that the value of the clinic was $152,605.44 with $103,744.00 of the value being the goodwill of the business. Husband presented no expert testimony regarding the value of the business. The trial court entered judgment which included an award of alimony in lieu of property division as well as support alimony to Wife.

## I.

## GOODWILL OF THE BETHANY FOOT CLINIC

■ Husband first takes issue with the trial court considering the goodwill of his medical practice as marital property. He testified that there was no goodwill because he was the reason the patients came to the Bethany Foot Clinic and "not very many" of the patients would stay at the Bethany Foot Clinic with a new doctor if Husband sold it.

■ The professional practice of one spouse is an appropriate element of the marital property to be divided between the parties where it is jointly-acquired property. *Ford v. Ford,* 766 P.2d 950 (Okla.1988); *Carpenter v. Carpenter,* 657 P.2d 646 (Okla. 1983). The issue before us is whether goodwill of Husband's podiatry practice may be considered in determining the value of the practice.

In *Travis v. Travis,* 795 P.2d 96, 97 (Okla. 1990), and *Mocnik v. Mocnik,* 838 P.2d 500, 504 (Okla.1992), we considered the valuation as marital property of goodwill of a law practice and a medical practice respectively. *Travis* and *Mocnik* thoroughly discussed the split of authority on the issue and we deem it unnecessary to review the cases of each of the jurisdictions cited therein. Rather, we note the jurisdictions disagree as to whether

goodwill of a professional practice may be included in the valuation of the practice for purposes of marital property division. The trend, however, is to allow the goodwill of a medical practice to be included in the valuation thereof. *Mocnik,* 838 P.2d at 504.[1]

■ Pursuant to 60 O.S.1991, §§ 315 and 316, goodwill of a business is defined as "the expectation of continued public patronage," and is considered property transferable like any other property. *See also Freeling v. Wood,* 361 P.2d 1061, 1063 (Okla.1961) ("The 'good will' value of any business is the value that results from the *probability that old customers will continue to trade with an established concern....* [Such] good will of a business may be sold.") (Emphasis added); *Travis v. Travis,* 795 P.2d 96, 97 (Okla.1990) (quoting *Freeling* ); *Mocnik v. Mocnik,* 838 P.2d 500, 504 (Okla.1992) (quoting *Travis* ).

In *Travis,* we considered whether the goodwill of a law practice could be considered a marital asset. In our discussion of the issue, we found the reasoning of the court in *Prahinski v. Prahinski,* 75 Md.App. 113, 540 A.2d 833 (1988), helpful. The *Prahinski* court observed that a law practice was not transferable because a lawyer's clients cannot be sold and the right to represent them is transferable only with their express consent. Thus, goodwill of the law practice in that case was entirely dependent upon the reputation of the lawyer. Since it could not be considered a business asset, it was not true goodwill. In coming to this conclusion, we observed in *Travis* that the *Prahinski* court held:

"(1) Where goodwill is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of a business.

---

1. Naturally, each case is different and must be judged accordingly. For instance, the existence of a stockholders' agreement which assigns a value to stock in the event a stockholder leaves the practice and must sell back his stock will affect the result as it did in *Mocnik* discussed *infra.*

(2) If the goodwill depends on the continued presence of a particular individual, such good will[sic], by definition, is not a marketable asset distinct from the individual." *Travis,* 795 P.2d at 100 (quoting *Prahinski,* 540 A.2d at 843).

Based upon this understanding of "goodwill" of a law practice, we concluded that the law practice at issue had no goodwill value for purposes of marital property because such goodwill was not distinct from the reputation of the lawyer. Rather, the Court deemed it more equitable to consider the earning capacity of the lawyer and set support alimony based upon that earning capacity. *Travis,* 795 P.2d at 100.

However, in the case at bar, the problems associated with valuing goodwill of a law practice are not present. Generally, a medical doctor's practice is more easily transferred to another doctor than is a law practice to another lawyer. The expert witness in the instant case noted that typically when transfer of a medical practice is to take place, the selling doctor will introduce the purchasing doctor to the patients to prepare those patients for a transition. Of course, the patients may choose not to continue with the new doctor when their former doctor leaves the practice, but many choose to stay at the clinic with the new doctor. Consequently, some goodwill, "the expectation of continued public patronage," exists when a podiatry clinic is sold, and Wife presented evidence of such goodwill in the case at bar.

In determining the value of the Bethany Foot Clinic, the expert witness consulted the Goodwill Registry, "an accumulation of information concerning sales of medical related practices by experts." From this publication, the expert determined that of the most recent purchases of podiatry clinics, an average of thirty-two percent (32%) of the podiatry patients stay with the clinic after it is sold to a new doctor. The range from which he obtained the average was 21% to 44% of clients staying.

Noting that the traditional method used in valuing a medical practice is the previous year's gross income, the expert then took the previous year's gross income at the clinic ($324,201.51) and multiplied it by the 32% figure to arrive at a goodwill value of $103,744.00. Adding this to the value of the remaining business assets, the expert found the total value of the Bethany Foot Clinic to be $152,605.44. The trial court accepted this valuation and used it in determining how much alimony in lieu of property division to award.

We find that the trial court did not err in considering the goodwill of the Bethany Foot Clinic as a factor in determining the value of the clinic as marital property. The goodwill of the Bethany Foot Clinic is distinct from the personal reputation of Dr. Traczyk. Although many of Dr. Traczyk's patients would not continue to patronize the Bethany Foot Clinic were Dr. Traczyk to sell to another podiatrist, competent evidence indicates that many would stay. Indeed, Dr. Traczyk may use the goodwill as a selling point to potential purchasers.

> "If goodwill is to be divided as an asset, its value should be determined either by an agreement or *by its fair market value.* Both of these methods are widely accepted for valuing goodwill. *See* annotation, 78 A.L.R.4th 853, 860–71 (1987)." *Mocnik,* 838 P.2d at 505.

That percentage of patients who continue at the clinic after its transfer may be considered the goodwill of the clinic in this case. *See Freeling,* 361 P.2d at 1063 (describing goodwill as the "probability that old customers" will remain with the establishment after its sale). The undisputed evidence was that 32% of Husband's patients would be expected to remain. This percentage multiplied by the previous year's gross income adequately represents the fair market value of the goodwill of the Bethany Foot Clinic, and we will not disturb the trial court's valuation of marital property as it is not clearly against the weight of the evidence. *Mocnik,* 838 P.2d at 507; *Ford v. Ford,* 766 P.2d 950 (Okla.1988).

Having determined that the Bethany Foot Clinic's value included goodwill in the amount

of $103,744.00, it was within the trial court's discretion to award half of the total value of the Bethany Foot Clinic, including goodwill, as alimony in lieu of property division.

In so holding we distinguish the case of *Mocnik v. Mocnik, supra,* in which we determined the trial court erred in awarding to the wife of a partner in a medical practice an interest in the goodwill of the corporation to which he was one of several stockholders. Each of the practicing physicians was a stockholder in the group, and any stockholder who wished to leave the practice was required to sell all of their stock back to the corporation at book value. We concluded *"there was no way for [the] husband to realize his share of the goodwill of the [practice]"* because the partnership agreement unambiguously states what value a partner could recover if he were to withdraw from the practice. 838 P.2d at 504 (Emphasis in original). Thus, the value of goodwill was determined by the agreement.

We concluded that the way the agreement was structured, the husband could not recoup the goodwill value of the partnership in any way other than continuing to practice with the corporation. Therefore, the goodwill he had in the practice could only be his future income as a stockholder/practitioner, and since future income may not be considered marital property, the goodwill in *Mocnik* could not be divided as marital property. Thus, the trial court in *Mocnik* erroneously valued and included goodwill of the practice as marital property subject to division.

Our rationale for disallowing goodwill as marital property in *Mocnik* does not extend to this case for the obvious reason that Dr. Traczyk is not constrained by a stockholder's agreement which requires him to sell back his stock in order to leave the practice. He is free to sell the clinic to another podiatrist who will receive the benefit of the clinic's goodwill upon the sale thereof. Consequently, the goodwill of the clinic may be determined by looking to its fair market value.

■ Husband further argues that by both allowing goodwill to be divided as marital property and awarding support alimony the trial court has charged him twice for his future income. We first reiterate that the goodwill of the Bethany Foot Clinic is not properly characterized as future income. Rather, it is an asset of the clinic.

Husband, though, disagrees with the distinction between future income and assets. He asserts two cases cited in *Travis* resolve the issue of "double-dipping" into his future income. However, we find these cases, *Holbrook v. Holbrook,* 103 Wis.2d 327, 309 N.W.2d 343 (1981), and *Beasley v. Beasley,* 359 Pa.Super. 20, 518 A.2d 545 (1986), *allocatur denied,* 516 Pa. 631, 533 A.2d 90 (1987), unpersuasive because, as *Travis* indicates, they both concerned the goodwill of law practices where such goodwill was related to the reputation of the lawyer. In other words, *Holbrook* and *Beasley* are distinguishable because they did not involve a professional practice with transferable goodwill as the case at bar did.

■ The goodwill of the Bethany Foot Clinic was valued as an asset and was a factor in determining the total value of the business for property division purposes. This goodwill was part of the property which should be divided between the parties; Wife had a right to receive her share of the property. 43 O.S.1991, § 121. On the other hand, the award of *support alimony* was a separate determination based upon Husband's ability to pay and Wife's demonstrated need. *Johnson v. Johnson,* 674 P.2d 539 (Okla.1983). Although the property division is permanent and irrevocable, the award of support alimony is subject to modification upon a showing of substantial change in circumstances, i.e. Husband's ability and/or Wife's demonstrated need. 43 O.S.1991, § 134; *Clifton v. Clifton,* 801 P.2d 693 (Okla. 1990).

> "[S]upport alimony is not alimony in lieu of a division. Support alimony is exactly what its name implies, alimony for support and maintenance. Alimony *in lieu of a division* is given for satisfaction of a property division obligation. These are distinct

obligations and the acceptance of one does not by implication waive the right of the other." *Greer v. Greer*, 807 P.2d 791, 794 (Okla.1991) (Emphasis in original).

By awarding support alimony and including goodwill in the value of the business for property division purposes, the trial court did not "double dip" into Husband's future income. Both awards, one for support alimony and one for alimony in lieu of property division were proper and distinct from the other. We find no error in the trial court's valuation of the marital property and award of alimony in lieu of property division.

## II.

### FIXED INTEREST RATE ON THE ALIMONY IN LIEU OF PROPERTY AWARD

■ Husband next asserts the trial court erroneously established a fixed interest rate on the support alimony award. The trial court awarded to Wife $86,275.00 in alimony in lieu of property division with a portion to be paid in a lump sum. The remainder, $70,000.00, was to be paid in monthly installments of $3,200.00. To this amount the court added interest at the rate of 11.71% for a total of $24,301.00. Husband asserts that the trial court erred in imposing the 11.71% interest rate citing 12 O.S.1991, § 727(B) for support. Section 727(B) provides:

"For purposes of this section, interest [on all judgments of courts of record] shall be at an annual rate equal to the average United States Treasury Bill rate of the preceding calendar year as certified to the Administrative Director of the Courts by the State Treasurer on the first regular business day in January of each year, plus four percentage points."

Wife responds by noting that the U.S. Treasury Bill rate for 1990 was 7.71% making interest under the statute 11.71% (7.71% plus 4%). Husband does not dispute this assertion. Rather he argues the rate should not be fixed but should vary each year in relation to the change in the Treasury Bill rate. Other than § 727(B), Husband cites to no authority for his position that the rate of interest should vary each year. Reading § 727 in its entirety reveals that the rate of interest applied to judgments pursuant to § 727(B) is to continue for the life of the judgment. In discussing the effect of an after enacted statute changing the rate of interest on judgments, we said in *Timmons v. Royal Globe Ins. Co.*, 713 P.2d 589, (Okl. 1985):

"* * * No term of a judgment may be affected by after-enacted legislation. *To hold otherwise would undermine the constitutionally-shielded concept of an 'accrued' or 'vested' right in the adjudicated obligation.* * * *" (Emphasis added)

We adopt this rationale to this proposition and hold it to be without merit.

## III.

### ACCELERATION OF ALIMONY PAYMENTS UPON DEFAULT

■ As part of its order awarding alimony, the trial court further decreed that if Husband failed to timely pay as ordered, all of the payments would be accelerated and become due immediately. In *Record v. Record*, 816 P.2d 1139 (Okla.1992), we expressly held such an acceleration clause invalid on the grounds that an alimony payment may not be enforced until it is due and owing. However, Husband has waived determination of the proposition by failing to assert it in his Motion for New Trial. 12 O.S.1991, § 991(b); *Reeves v. Agee*, 769 P.2d 745 (Okla.1989).

Wife's Application for Appeal–Related Costs and Attorney's Fees is DENIED. For the above and foregoing reasons, the opinion of the Court of Appeals is VACATED and the judgment of the trial court is AFFIRMED.

WILSON, C.J., and HODGES, LAVENDER, SIMMS and HARGRAVE, JJ., concur.

KAUGER, V.C.J., concurs in result.

OPALA, SUMMERS and WATT, JJ., concur in judgment.