2014 OK CIV APP 92

In re the Marriage of Laura A. BAL-
LINGER, Petitioner/Appellee,

v.

Glenn M. BALLINGER,
Respondent/Appellant.

No. 111,372.

Court of Civil Appeals of Oklahoma,
Division No. 4.

Oct. 10, 2014.

Jon L. Hester, Scott A. Hester, Hester Schem Hester & Deason, Edmond, OK, for Petitioner/Appellee.

William E. Liebel, James T. Gorton, Law Offices of William E. Liebel, Oklahoma City, OK, for Respondent/Appellant.

DEBORAH B. BARNES, Chief Judge.

¶ 1 Respondent/Appellant Glenn M. Ballinger (Husband) appeals a divorce decree filed in December 2012. Petitioner/Appellee Laura A. Ballinger (Wife) counter-appeals. Although five children were born of the marriage, neither party raises issues on appeal relating to the children. Rather, Husband argues, among other things, that the trial court erred in its valuation of Wife's dental practice, and Wife argues the trial court erred in failing to divide certain "Plan B" retirement benefits of Husband. Based on our review, we affirm in part, reverse in part, and remand with directions.

**BACKGROUND**

¶ 2 The parties were married in 1990. Shortly before the marriage, Husband commenced employment with the City of Oklahoma City as a firefighter. In 1996, Wife started her dental practice. In November 2011, Wife filed a petition for divorce, and a trial was held over four days in July 2012.

¶ 3 Both parties hired experts to provide a valuation of Wife's dental practice. Husband's expert, a certified public accountant and valuation analyst, calculated the value of the dental practice using "the market method," and concluded it is worth $382,447. This calculation included a value of the market-able goodwill of the practice based upon comparable sales. In particular, the goodwill calculation was based upon the previous year's gross income of the dental practice—$765,480—"multiplied by a goodwill percentage that comes from the market data"—48.47%—resulting in a goodwill value of $371,028. To this goodwill value Husband's expert added $11,419, representing the tangible value of the dental practice, resulting in the total valuation of $382,447.

¶ 4 Wife's expert used a "net asset method" to calculate the value of the dental practice. This method did not include any intangible or goodwill value, but instead determined the value of the practice based on the funds that would be generated by a liquidation of the practice—i.e., by taking the total assets of the practice, which Wife's expert concluded equaled $154,668, and subtracting the total liabilities, which Wife's expert concluded equaled $155,777. Consequently, Wife's expert valued the practice at a negative amount: -$1,109.

¶ 5 The trial court rejected Wife's expert's valuation, stating in the divorce decree that Wife's expert "wound up on using only a net asset method, when both experts agree, and as their reports respectively indicate, that is typically not an acceptable method when valuing a dental practice." The decree also states that Wife's expert "admits that in some instances when utilizing a percent factor for gross revenue sales, one can achieve as much as 60–65%, whereas [Husband's expert] wound up with an amount of approximately 48%"—referring to the goodwill percentage used by Husband's expert—and that "even considering the average of other Oklahoma actual market transactional sales amounted to around 52%."

¶ 6 Regarding the method relied upon by Husband's expert, the decree states the market method is

something that both experts agree is an acceptable method for valuation of dental practices. . . .

. . . [Husband's expert] researched the goodwill registry—something that he testifies has become more and more reliable over the years; however, he also re-

searched market data transactions from ... a former dentist who has retired and engages in the purchase and sale of dental practices in the Oklahoma area.

... [Husband's expert] also made it clear that along with the other criteria he specified for his assessment ... he limited his data to actual sales transactions, not to other valuation positions such as ... when an actual sale does not occur. This supports the reliability of [Husband's expert's] data, and his ultimate value finding of $382,4[4]7....

¶ 7 However, the trial court stated in the decree that the goodwill percentage used by Husband's expert "includes all goodwill, both personal and enterprise," and found that Husband's expert's valuation does not constitute "the fair market value of [Wife's] dental practice" because this "value does not separate personal and enterprise goodwill." The trial court found the value of the dental practice to be $160,686.61.

¶ 8 Regarding Husband's "Plan B" firefighter retirement benefits, a plan in which Husband had not yet elected to participate, the trial court found it would "not divide Plan B, it is not an asset to be divided...." However, it stated that "if [Husband] should elect Plan B, that to the extent it may affect anything that [Wife] would be entitled to without that election, [Husband] is required to indemnify her and make sure that she is made whole."

¶ 9 The trial court divided numerous property items. Among other things, and pertinent to this appeal, the trial court awarded Husband "[t]he bulldozer at a value of $10,000.00," and found there existed marital debt in the form of two "401k [loans] with Fidelity Investments" in the total amount of $22,510.

¶ 10 From the divorce decree, Husband appeals, and Wife counter-appeals.

### STANDARD OF REVIEW

■ ¶ 11 "A divorce suit is one of equitable cognizance in which the trial court has discretionary power to divide the marital es-

tate." *Colclasure v. Colclasure,* 2012 OK 97, ¶ 16, 295 P.3d 1123 (footnote omitted). The division of property acquired during the marriage by the joint industry of the husband and wife must be fair, just and reasonable. *Id.;* 43 O.S. Supp.2012 § 121(B). "However, a marital estate need not necessarily be equally divided to be an equitable division because the words just and reasonable in § 121 are not synonymous with equal." *Colclasure,* ¶ 16 (footnote omitted). "The trial court has wide latitude in determining what part of jointly-acquired property shall be awarded to each party." *Id.* (footnote omitted). This Court will not disturb the trial court's decision regarding property division unless the trial court abused its discretion or the decision is clearly against the weight of the evidence. *Standefer v. Standefer,* 2001 OK 37, ¶ 19, 26 P.3d 104. *See also Smith v. Villareal,* 2012 OK 114, ¶ 7, 298 P.3d 533 (In an action of equitable cognizance there is a presumption in favor of the trial court's findings and they will not be set aside unless the trial court abused its discretion or the finding is clearly against the weight of the evidence.). Likewise, the decision of the trial court to classify property as marital or separate will not be disturbed on appeal unless clearly contrary to the weight of the evidence. *Standefer,* ¶ 18. "[T]he trial court's choice of method for the valuation of marital property and its determination of value will not be disturbed on appeal unless contrary to law or the clear weight of the evidence." *In re Marriage of Lahman,* 2009 OK CIV APP 26, ¶ 13, 209 P.3d 793 (citations omitted).

### ANALYSIS

#### I. Valuation of the Dental Practice (Husband's Argument)

■ ¶ 12 Husband argues the trial court erred in its valuation of Wife's dental practice.[1] In particular, Husband asserts that "when utilizing actual market sales data"—as his expert did—"the issue of distinguishing between 'enterprise' versus 'personal' goodwill is completely avoided, because it is only the 'enterprise' goodwill that can result in

---

1. A professional practice acquired during the marriage is marital property subject to equitable

division. *See, e.g., Mocnik v. Mocnik,* 1992 OK 99, 838 P.2d 500.

the sale of a dental practice." Accordingly, Husband asserts the trial court erred in finding Husband's expert's valuation did "not separate personal and enterprise goodwill," and he argues that the trial court, therefore, erred in reducing Husband's expert's valuation on this basis. Husband asserts the trial court "made no findings to justify its significant deviation from the only credible value in evidence," and requests that this Court determine that the value of Wife's dental practice equals the amount calculated by his expert.

¶ 13 In *Mocnik v. Mocnik*, 1992 OK 99, 838 P.2d 500, the Oklahoma Supreme Court stated, "[i]f goodwill is to be divided as an asset, its value should be determined either by an agreement or by its fair market value. Both of these methods are widely accepted for valuing goodwill." *Id.* ¶ 21 (citation omitted). "Market value is the price negotiated by a willing buyer, not obligated to buy, and a willing seller, not obligated to sell, in a free and open market. The term market value has been construed as synonymous with actual value." *Howell v. Texaco, Inc.*, 2004 OK 92, ¶ 17, 112 P.3d 1154 (citations omitted).

¶ 14 Regarding the definition of goodwill, the Oklahoma Supreme Court has explained:

Goodwill has been defined as the "favor or prestige that a business has acquired beyond the mere value of what it sells." The Oklahoma Statutes define it as, "the expectation of continued public patronage...." [2] According to *Travis* [*v. Travis*, 1990 OK 57, 795 P.2d 96,] the goodwill value of a business "is the value that results from the probability that old customers will continue to trade with an established concern." *Mocnik*, ¶ 14 (citations omitted) (footnote added). *See also Freeling v. Wood*, 1961 OK 113, ¶ 12, 361 P.2d 1061 (Goodwill "has been defined as the custom or patronage of any established trade or business; the benefit or advantage of having established a business and secured its patronage by the public.").

¶ 15 If the value arising from the favor or prestige of a practice, or from its expectation of continued public patronage, "depends on the continued presence of a particular individual," then this value, "by definition, is not a marketable asset distinct from the individual." *Travis v. Travis*, 1990 OK 57, ¶ 10, 795 P.2d 96 (citation omitted). On the other hand, if this value

is a marketable business asset distinct from the personal reputation of a particular individual, as is usually the case with many commercial enterprises, that goodwill has an immediately discernible value as an asset of the business and may be identified as an amount reflected in a sale or transfer of a business.

*Id.* (citation omitted).[3]

¶ 16 Accordingly, if any portion of the goodwill of a practice *constitutes a truly marketable asset*, it may be used in determining the market value of the practice. To the extent the goodwill of a practice constitutes a marketable asset, it is, "by definition," distinct from a particular individual. *See Travis*, ¶ 10.[4]

¶ 17 In *Traczyk v. Traczyk*, 1995 OK 22, 891 P.2d 1277, the Oklahoma Supreme Court upheld a fair market value calculation of the goodwill of a podiatry clinic operated by the

---

**2.** Pursuant to 60 O.S.2011 § 315, "[t]he goodwill of a business" is defined as "the expectation of continued public patronage...."

**3.** In *Travis*, the Supreme Court concluded that, under the facts presented, the favor or prestige (or expectation of continued public patronage) of the husband's sole practitioner law practice did not have a value distinct from the attorney/husband, and, therefore, his law practice did not have a goodwill value subject to equitable division. Among other things, the *Travis* Court stated that "law practices cannot be bought and sold as can other professional practices...." *Id.* ¶ 12. In *Mocnik*, the Supreme Court explained its holding in *Travis* as follows: "We held in *Travis* that the law practice of a sole practitioner had no goodwill value because 'the reputation of the lawyer cannot be purchased by another seeking to acquire an established practice.' This is especially true when the professional is a sole practitioner." *Mocnik*, ¶ 14 (citation omitted).

**4.** That is, the *Travis* Court stated that to the extent goodwill depends on the continued presence of a particular individual, it is to that extent not marketable. It follows deductively that if any of the goodwill *is* marketable, that portion of the goodwill is *not* dependent on the continued presence of a particular individual.

husband (Dr. Traczyk) through a wholly owned professional corporation (the Bethany Foot Clinic). In *Traczyk*, the expert witness "took the previous year's gross income" of the Bethany Foot Clinic, "and multiplied it by the 32% figure"—a figure representing, according to the data relied upon by the expert, the average percentage of podiatry patients that stay with a podiatry clinic when one is sold to a new doctor—to arrive at a market value of the goodwill of the business. *Id.* ¶¶ 12–13.

¶ 18 The *Traczyk* Court explained its holding as follows:

Although many of Dr. Traczyk's patients would not continue to patronize the Bethany Foot Clinic were Dr. Traczyk to sell to another podiatrist, competent evidence indicates that many would stay. Indeed, Dr. Traczyk may use the goodwill as a selling point to potential purchasers. . . .

That percentage of patients who continue at the clinic after its transfer may be considered the goodwill of the clinic in this case. The undisputed evidence was that 32% of Husband's patients would be expected to remain.

*Id.* ¶¶ 14–15 (citation omitted). In particular, "[t]he range from which [the expert] obtained the [32%] average was 21% to 44% of clients staying," and the expert "took the previous year's gross income at the clinic ($324,201.51) and multiplied it by the 32% figure to arrive at a goodwill value of $103,744.00. Adding this to the value of the remaining business assets, the expert found the total value of the Bethany Foot Clinic to be $152,605.44." *Id.* ¶¶ 12–13.

■ ¶ 19 In the present case, Husband's expert used the previous year's gross income of Wife's dental practice—$765,480—in his goodwill-value calculation. As noted by the *Traczyk* Court, "the traditional method used in valuing a medical practice is the previous year's gross income. . . ." *Id.* ¶ 13. The use of the previous year's gross income was especially appropriate in this case because the gross income of Wife's dental practice had

consistently risen from year to year.[5] Husband's expert then multiplied the previous year's gross income by a "goodwill percentage"—48.47%—resulting in a goodwill value of $371,028. Husband's expert testified that this goodwill percentage was based upon comparable sales of dental practices "where they'd allocated the purchase price" to show the amount paid for the tangible assets and the amount paid for the goodwill. Husband's expert testified, "And then from that I calculated what the goodwill percentage was based upon the most recent year's gross income."

¶ 20 Husband's expert testified the goodwill percentages for comparable sales of dental practices in Oklahoma "fall in a pretty tight grouping with the lowest being 40 percent and the highest being 53 percent[.]" He testified that two of the comparable sales were of dental practices in Oklahoma City (i.e., close to Wife's practice in Edmond) that were sold in 2011. One of these had a gross income of $710,000, "in the same range" as Wife's practice. The portion of the sale price for the goodwill of this practice was $341,302, and the "goodwill allocation" was, therefore, "48.07 percent of the gross income for the year." He testified, "that's a pretty good comparable. And I thought with all these others, everything is there within a pretty tight bunch. Everything is just pretty close. There's not too much variation within those numbers."

¶ 21 Husband's expert testified he also reviewed national "Goodwill Registry information" that included data from 1,949 dental practice valuations. He testified there was so much data that he only looked at sales from the most recent year, 2011, and only at sales of dental practices that were located in urban areas and that had a gross income between $700,000 and $899,000. The goodwill percentages from these sales ranged from 37% to 70%. One of the sales was of a dental practice in Oklahoma that had a gross income of $715,940 and a goodwill percentage of 48.47%, i.e., the goodwill percentage

---

**5.** As stated in the divorce decree, "the evidence was not in dispute that [Wife's] income almost always increases year after year," and, consequently, Wife's expert's decision to "utilize[ ] a three year weighted average of [Wife's] income . . . caused a skewed negative reduction in her income."

adopted by Husband's expert. Husband's expert testified he believed this particular sale "was a really good comparable." He testified there was "a lot of consistency in the goodwill values within each of these that were selected that fell within somewhat the same gross income range. And ... the average of these goodwill percentages is 52.92[%]." However, he testified he selected a slightly lower percentage—48.47%—because it was the same goodwill percentage as the Oklahoma sale in the Goodwill Registry, and also because it was approximately the same goodwill percentage as the sale of the Oklahoma dental practice, discussed above, with a gross income of $710,000 and a goodwill percentage of 48.07%.

¶ 22 We conclude that the method utilized by Husband's expert adequately distinguished between "personal" and "enterprise" goodwill. That is, it distinguished between the goodwill of the dental practice that, according to comparable sales, constitutes a marketable asset, and that portion of the prestige or expectation of continued public patronage of Wife's practice that is not marketable because dependent on her continued presence. The trial court, therefore, erred when it found Husband's expert's valuation did "not separate personal and enterprise goodwill," and when it reduced Husband's expert's valuation on this basis.

 ¶ 23 Because the trial court adopted Husband's expert's valuation method but reduced the value of the dental practice to $160,686.61, it follows that the trial court implicitly determined the goodwill percentage to be around 20%, rather than the 48.47% proposed by Husband's expert. However, the range of marketable goodwill percentages in the first set of data relied upon by Husband's expert was from 40% to 53%.[6] In the second set of data relied upon by Husband's expert, the range was from 37% to 70%. We conclude the trial court's determination regarding the fair market value of the goodwill of the practice is clearly against the weight of the evidence.

¶ 24 Accordingly, we reverse the trial court's valuation of Wife's dental practice, and we remand with directions to the trial court to recalculate an appropriate value for the dental practice within the range of the evidence presented and in a manner consistent with this Opinion. Following a recalculation of the practice's value, the trial court is directed to recalculate the amount of property division alimony, and to make any other adjustments as may be required for an equitable division of the marital estate.

## II. Value and Ownership of the Bulldozer (Husband's Argument)

 ¶ 25 Husband asserts he and Wife had only a one-half interest in the bulldozer, and that the other one-half interest was owned by his brother. Husband further asserts the bulldozer is worth only $4,000, and that Husband and Wife's interest is, therefore, worth only $2,000. He argues the trial court erred by awarding him "[t]he bulldozer at a value of $10,000.00."

¶ 26 As to Husband's assertion that the bulldozer is worth only $4,000, Wife testified she believes the bulldozer is worth anywhere between $10,000 and $27,000, and Husband admits he testified he bought the bulldozer for nearly $10,000 in 2005. As to the ownership of the bulldozer, Husband asserts the bulldozer is owned equally with his brother— he testified his brother paid half the price when they bought it. Wife does not deny this assertion, and testified, on cross-examination, that she has seen two checks from Husband's brother totaling "[c]lose" to "about half of the purchase price" of the bulldozer.

¶ 27 We conclude the trial court's determination as to the value of the bulldozer is not clearly against the weight of the evidence. However, we conclude the trial court erred in its determination as to ownership, and that the trial court should have determined Husband's brother owns a one-half interest equal to $5,000 of the total $10,000 value. Therefore, the trial court should have awarded Husband a one-half interest in the bulldozer

---

**6.** This range excludes the sales of the two practices listed with gross incomes of $470,849 and $1,225,282, respectively. These gross incomes are outside the range of the other comparable sales, and do not appear to have been relied upon by Husband's expert.

at a value of $5,000, and the divorce decree is modified accordingly.

### III. Credit to Wife for Two 401(k) Loans (Husband's Argument)

¶ 28 Husband argues the trial court erred in reducing the marital estate based on two "401k [loans] with Fidelity Investments" in the total amount of $22,510. He first argues that these loans were not appropriate business loans for Wife's dental practice. Husband states that even Wife's expert testified that if these loans exist, they would constitute personal loans rather than business loans. Husband also argues Wife failed to present evidence, other than her own self-serving testimony, as to the existence of these loans.

¶ 29 In response, Wife does not deny she failed to present evidence other than her unsupported testimony regarding the existence of these loans,[7] but argues "that it would be absurd for [me] to simply make up the existence of these debts and lie under oath regarding the existence of the debts...."

¶ 30 We conclude the trial court erred in finding there exists marital debt in the form of two loans with Fidelity Investments in the total amount of $22,510. Wife testified the loans were taken solely for business purposes. This testimony was contradicted by Husband's expert who testified, among other things, that "a 401K may not, by law, make a loan to its planned sponsor," Wife's dental practice. Absent any documentation demonstrating the existence of these loans, we conclude the trial court's determination in this regard is clearly against the weight of the evidence. Therefore, this portion of the divorce decree is reversed.

### IV. Husband's Plan B Retirement Benefits (Wife's Argument)

¶ 31 Finally, we reject Wife's argument that the trial court erred in its determinations regarding the Plan B benefits. Retirement pensions constitute jointly-acquired property subject to equitable division

in a divorce, absent a specific statutory exemption. *Christmas v. Christmas*, 1990 OK 16, ¶ 9, 787 P.2d 1267 (citation omitted). "Whenever a divorce occurs, either before or after retirement, a district court possesses the power to award the respective spouses the property to which each of them is entitled. Pension benefits accumulated during the marriage as jointly acquired property are subject to equitable division in a divorce." *Tubbs v. State ex rel. Teachers' Ret. Sys. of Okla.*, 2002 OK 79, ¶ 12, 57 P.3d 571 (citation omitted) (emphasis omitted). Unlike disability benefits received after a divorce to replace post-marriage wages, which constitute the recipient's separate property, retirement pensions "function as a substitute for life savings"—i.e., "[i]f a worker was not provided retirement coverage, the additional wages received would presumably be saved for superannuation. These savings, earned during the marriage, would unquestionably constitute joint property." *Christmas*, ¶ 7. Here, as the trial court explained in the divorce decree, the parties stipulated that Husband's "defined benefit plan accruing from date of marriage" and through the date the petition for divorce was filed constitutes marital property subject to equitable division. The trial court awarded Wife

> one-half of the marital portion only of [Husband's] Oklahoma Firefighter's Pension and Retirement System defined benefit plan, the same to be accomplished by a proper Domestic Relations Order which the Court shall retain jurisdiction over this matter to the extent necessary to ensure and enforce completion and proper processing of a Domestic Relations Order.

¶ 32 However, Wife argues the Plan B benefits, in which Husband has *not* elected to participate, are *also* subject to equitable division. That is, Wife admits "it is undisputed that, as of the date of trial, [H]usband had not elected to participate in Plan B," but argues that because Husband has "gained the right to choose Plan B benefits at any time he wishes primarily as a result of marital efforts," those benefits should be divided,

---

7. We note that Wife's Exhibit 70 Fidelity Investments report does not contain any indicia of the alleged loans.

in advance of this hypothetical election, as marital property. Although the Plan B benefits in question constitute retirement benefits rather than disability benefits, we disagree with Wife that the mere possibility of Husband electing to participate in Plan B in the future necessitates the division of those benefits by the trial court. "A district court possesses the power to adjudicate all of the property rights held by the spouses in the retirement benefit," *Tubbs*, 2002 OK 79, ¶ 17, 57 P.3d 571, but the Plan B retirement benefits at issue here are merely speculative and hypothetical.

¶ 33 In the divorce decree, the trial court explained that Husband was not currently participating in Plan B and had not elected to do so. Regarding Plan B, the trial court found

> it will not divide Plan B, it is not an asset to be divided; provided, however, the Court wants the record to be clear in its final order that if [Husband] should elect Plan B, that to the extent it may affect anything that [Wife] would be entitled to without that election, [Husband] is required to indemnify her and make sure that she is made whole. For example, if it reduces the monthly amount [Wife] is entitled to receive under the retirement as a result of [Husband's] election, then [Husband] is required to make up that difference. The fact that [Husband] may elect Plan B is not going to be allowed to affect what [Wife] has been awarded from the defined benefit retirement plan.

¶ 34 We conclude that the trial court's determinations regarding Husband's retirement benefits satisfy the requirement that the property acquired during the marriage be divided in a manner that is fair, just and reasonable, 43 O.S. Supp.2012 § 121(B), and the trial court did not err in its determina-

tions regarding Husband's retirement benefits.[8]

## CONCLUSION

¶ 35 We affirm the trial court's determinations as to the Plan B benefits. However, we reverse the trial court's valuation of Wife's dental practice, and we remand with directions to the trial court to calculate an appropriate value for the dental practice within the range of the evidence presented and in a manner consistent with this Opinion. We also reverse and modify the trial court's determination as to the bulldozer. The trial court should have awarded Husband a one-half interest in the bulldozer at a value of $5,000. Finally, we reverse the finding that there exists marital debt in the form of two loans with Fidelity Investments in the total amount of $22,510. Following a recalculation of the dental practice's value, and after taking into account the modification of the bulldozer award and reversal of the finding as to the two loans, the trial court is directed to recalculate the amount of property division alimony, and to make any other adjustments as may be required for an equitable division of the marital estate.

¶ 36 **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH DIRECTIONS.**

WISEMAN, P.J., and GOODMAN, J., concur.

---

8. We also conclude the trial court's determination is consistent with 11 O.S.2011 § 49–126(9), which provides, pertinent to this case, that a spouse "shall have a right to receive benefits payable to a member of the System under the Oklahoma Firefighters Deferred Option plan provided for pursuant to Section 49–106.1 of this title, but only to the extent such benefits have been credited or paid into the member's Oklahoma Firefighters Deferred Option Plan account during the term of the marriage."