922 So.2d 1097 (2006)
Kathy H. RUSSELL, Appellant,
v.
Barry M. RUSSELL, Appellee.
No. 4D04-4555.
District Court of Appeal of Florida, Fourth District.
March 22, 2006.
*1098 Perry W. Hodges, Jr. of Rogers, Morris & Ziegler LLP, Fort Lauderdale, for appellant.
Howard S. Friedman of Fischler & Friedman, P.A., Fort Lauderdale, for appellee.
TAYLOR, J.
The former wife appeals a Qualified Domestic Relations Order (QDRO), which denied her any share in her former husband's Deferred Retirement Option Plan (DROP). We reverse.
The parties entered into a property settlement agreement, which was incorporated into the final judgment of dissolution on January 26, 1998. With respect to the parties' pension plans, the agreement's apparent intention was to grant each party a one-half interest in those accumulations to the other party's pension plan accruing during the marriage. The settlement agreement provided that the date of valuation for the parties' pensions would be the date the petition for dissolution was filed, July 19, 1995.
On July 1, 1998, after entry of the final dissolution, DROP came into existence. DROP is an option under the Florida Retirement System which allows the participant to accrue retirement benefits while continuing to work.[1] The retirement benefits are paid into a separate account and accrue 6 1/2 % interest during the five year term. A 3% cost-of-living adjustment is also applied to the plan. At the end of the five year term, the participant actually retires and receives the accumulations in the DROP account as a lump-sum.
DROP is a sort of "virtual" retirement. Because the employee accrues retirement benefits five years earlier, his or her monthly benefit amount is effectively reduced in comparison to what it would have been had DROP not been elected. However, the lump-sum payout can be considerable. Here, the former husband will receive a lump-sum payout of $269,000.
The former husband's expert calculated the former wife's share of her former husband's pension benefit as $601.52. This figure was based on the value of the pension at the time of filing of the divorce petition and upon an anticipated retirement age of 62. In her motion for a QDRO, the former wife requested that her share of the pension benefit be paid into the DROP account along with the former husband's and earn interest and cost-of-living adjustments at the same rate as her husband's share.
The trial court denied the former wife's request, ruling that she was not entitled to participate in DROP benefits, which accrued to the former husband subsequent to the filing for dissolution. The court reasoned that DROP benefits were not a detriment to the former wife and that she should receive only what she bargained for under the marital settlement agreement. The QDRO entered by the trial court set the former wife's portion of the former *1099 husband's pension at $601.52, but with respect to DROP, stated:
6. DROP: The Participant is accruing monthly benefits in the DROP. The Alternate Payee shall not be entitled to participate in DROP and shall not be entitled to receive her awarded benefit until such time as Participant's participation in DROP terminates and he begins receiving his monthly benefit. The Participant shall receive 100% of all vested amounts accumulated as a result of his participation in DROP.
In reviewing a trial court's disposition of property, the appellate court must determine whether the rules of law were applied correctly and whether the trial court's discretionary authority was reasonably exercised. Walter v. Walter, 464 So.2d 538, 539 (Fla.1985). Contrary to the former husband's argument, this case is factually indistinguishable from Swanson v. Swanson, 869 So.2d 735 (Fla. 4th DCA 2004). There, the final judgment of dissolution established each party's 45% share in the pension of the other. Subsequently, the former husband entered the DROP program. We stated:
Furthermore, as is obvious, 45% of the value of the former Husband's pension benefits as of January 17, 1990 belongs to the former Wife. Therefore, the interest and cost of living adjustments which were applied to the former Wife's share, despite being in the former Husband's DROP account, should also belong to the former Wife. Moreover, the former Wife sufficiently established that the DROP account received a 3% cost-of-living adjustment on the first day of each July, and it accrued tax deferred interest "at an effective annual rate of 6.5 percent compounded monthly, on the prior month's accumulated ending balance, up to the month of termination or death." § 121.091(13)(c), Fla. Stat. Therefore, we hold the trial court erred by not awarding the former Wife interest and cost of living adjustments which accrued in the former Husband's DROP account.
Id. at 738; see also Ganzel v. Ganzel, 770 So.2d 304 (Fla. 4th DCA 2000) (stating that once the judgment of dissolution was entered, the former wife's share of former husband's DROP became her individual property).
We reverse the QDRO entered below and remand for entry of an order awarding the former Wife her share in the former husband's DROP benefits, along with any interest and cost of living adjustments which accrue thereon.
Reversed and remanded.
POLEN and SHAHOOD, JJ., concur.
NOTES
[1] See § 121.091, Fla. Stat. (2005)