926 So.2d 448 (2006)
Larry John PULLO, Former Husband, Appellant/Cross-Appellee,
v.
Sharon Denise PULLO, Former Wife, Appellee/Cross-Appellant.
No. 1D04-2155.
District Court of Appeal of Florida, First District.
April 13, 2006.
*449 Lyman T. Fletcher, Jacksonville, and Jeffrey A. Conner, of Fletcher & Conner, Jacksonville, for appellant/cross-appellee.
Natalie A. Tuttle, of Natalie Nice, P.A., Jacksonville, for appellee/cross-appellant.

EN BANC[1]
BROWNING, J.
Larry Pullo, the former husband, challenges an order of the trial court determining that the former wife, Sharon Pullo, was entitled to a portion of the former husband's Deferred Retirement Option Program (DROP) account and modifying the parties' 1995 dissolution judgment by converting the former wife's rehabilitative alimony to permanent alimony. The former wife argues on cross-appeal that she is entitled to interest and cost-of-living adjustments (COLAs) as to her portion of the amounts deposited into the DROP fund. We affirm the trial court's conversion of the rehabilitative alimony to permanent alimony; affirm the trial court's distribution of the DROP account to the parties; and reverse on the cross-appeal. We discuss only the DROP distribution and the cross-appeal.
A final judgment dissolving the parties' 25-year marriage and distributing their property was entered in 1995. The final judgment, in part, distributed the former husband's fully vested employer-based pension plan with the City of Jacksonville as follows:

*450 17. The Wife shall receive 33% of the Husband's City of Jacksonville Pension/retirement benefit. The monthly value of this account as of December, 1994 was $3,614.80. Therefore the Wife shall receive $1,192.88 per month upon the Husband's retirement from the City of Jacksonville (Fire and Rescue). The Husband shall notify the Wife in advance of his retirement plans and advise her of the time this benefit will be paid. Said payments shall be made directly to the Wife.
After the dissolution, the former husband continued to work for the City of Jacksonville and accrued further service credits in the defined-benefit pension plan. Subsequently, the City created a DROP which the former husband joined in January 2000. Pursuant to his participation in the DROP, the former husband was required to cease working for the City in January 2005.
At the hearing on the former wife's enforcement/modification petition the trial court received into evidence section 121.209 of the Jacksonville Municipal Code setting forth the terms and conditions of the Jacksonville Police and Fire Pension Fund DROP Plan. The ordinance begins with the following preamble:
In general, and subject to the provisions of this section, the Deferred Retirement Option Program, hereinafter referred to as the DROP, is a program under which an eligible Member of the Plan, may elect to participate, deferring receipt of normal retirement benefits while continuing employment with the City of Jacksonville without loss of any other employee benefits. Upon an eligible Member's election to participate in the DROP, the amount of credited service and final average salary becomes frozen for purposes of determining pension benefits. Additional service beyond the date of entry into the DROP shall no longer accrue any additional benefits under the Pension Fund. The deferred monthly retirement benefits under the DROP shall accrue in the Fund on behalf of the participant, plus interest compounded monthly, as provided in paragraph (c)(1), for the specified period of the DROP participation, as provided in paragraph (b)(1). Upon termination of employment, the participant shall receive the total DROP benefits, as provided in Section 121.209(c), and begin to receive the previously determined normal retirement benefits.
(Emphasis added.) Subsection (b)(5) of the DROP ordinance states:
The DROP participant shall be a retiree under the Pension Plan for calculation of increased pension benefits, unless otherwise prescribed herein, but not for the purposes of employment with the City of Jacksonville, and the availability of employee benefits and programs related thereto.
(Emphasis added.) Subsection (b)(6) of this ordinance states that, once made, an election to participate in the City's DROP "is irrevocable."
The former wife claims she is entitled to her pro-rata share of the DROP fund, COLAs, and interest on her share in the DROP fund pursuant to the terms of the final judgment. The former husband claims she is barred from any entitlement to the DROP funds. The trial court agreed in part with both parties, because the former husband had, in effect, retired when he entered DROP and was deferring only the receipt of the retirement funds that otherwise would be received by him and the former wife. Therefore, the former wife was entitled to her pro-rata share of such benefits, but the trial court denied COLAs and interest benefits on the amount of DROP funds awarded to the *451 former wife. We agree with the former wife's position on both the original appeal and her cross-appeal.

ANALYSIS
A former spouse's entitlement to an interest in a DROP fund and to interest, and to COLAs on such funds, has been addressed by our sister court, the Fourth District Court of Appeal, in similar cases to this appeal. See Russell v. Russell, 922 So.2d 1097 (Fla. 4th DCA 2006); Ganzel v. Ganzel, 770 So.2d 304 (Fla. 4th DCA 2000); Swanson v. Swanson, 869 So.2d 735 (Fla. 4th DCA 2004). We agree with these precedents and adopt their rationale as applicable here.
In Ganzel, that court concluded that a former wife was entitled to a pro-rata share of the former husband's post dissolution participation in a DROP fund, and stated:
Once the judgment of dissolution, which incorporated the settlement agreement, was entered, marital property rights no longer existed and only individual property rights remained. See, e.g., DeSantis v. DeSantis, 714 So.2d 637 (Fla. 4th DCA 1998). Therefore, once the judgment of dissolution was entered, $782.79 of the Former Husband's retirement benefits payable each month became the Former Wife's property. See, e.g., Joyce v. Joyce, 563 So.2d 1126, 1127 (Fla. 1st DCA 1990) (stating that "pure property settlement agreements are nonmodifiable absent consent of the parties").
In this case, each party's interest in the Florida Retirement benefits are [sic] being paid into a fund and earning interest. Pursuant to the judgment of dissolution, the $782.79 is the Former Wife's individual property to which the Former Husband has no claim.
Ganzel, 770 So.2d at 306.
By adopting and applying such rationale, we conclude that the former wife received an undivided individual property right in the former husband's retirement account that, under the dissolution judgment, entitles her to a pro-rata share of his DROP fund (that portion of the DROP fund the former wife would have received but for the former husband's deferring retirement benefits to the DROP fund). Accordingly, we affirm the trial court's determination on this issue.
Addressing the former wife's cross-appeal, we conclude that she is entitled to interest and COLAs on her accrued benefits in the former husband's DROP account. See Swanson, 869 So.2d at 738 ("Furthermore, as is obvious, 45% of the value of the former husband's pension benefits as of January 17, 1990 belongs to the former wife. Therefore, the interest and cost of living adjustments which were applied to the former wife's share, despite being in the former husband's DROP account, should also belong to the former wife."). Thus, we reverse the trial court's determination to the contrary and grant the relief requested by the former wife on cross-appeal.
Moreover, after careful review of our learned colleagues' dissent, we remain unpersuaded that the foregoing rationale should be abandoned for their rationale. We continue to disagree that Boyett controls this appeal, and that the dissent's analysis is not in conflict with Ganzel and Swanson, which is predicated on the Ganzel rationale.
In Boyett the court addressed the time a retirement plan is to be valued rather than ownership of a retirement plan as here. Here, no valuation issue is presented; only *452 the question of DROP's ownership is germane to this appeal's determination. The parties recognize DROP's value, but vehemently disagree over the quantum of the parties' ownership; accordingly, like our sister court in Ganzel and Swanson, we conclude Boyett is not controlling. Moreover, the fact that former husband gave up his right to accrue additional future benefits in order to enter DROP does not change their equation. It is clear that former husband entered DROP because the program provides an economic benefit for him, even under Ganzel, and he seeks here only to further increase that benefit by acquiring former wife's vested retirement benefits deferred in DROP, as compared to non-DROP participation. We find no basis in equity or property law to allow such a conversion of former wife's deferred retirement benefits.
Nor can we agree with the dissent's allegation that:
The issue in Ganzel was not whether the former wife in that case was entitled to a portion of the former husband's post-dissolution DROP fund pursuant to the terms of the parties' dissolution judgment; the former husband in that case agreed that the funds deposited into his DROP account were retirement benefits subject to the distribution scheme set forth in the parties' dissolution judgment.
Wolf, J., dissenting opinion at page 17. The parties in Ganzel never stipulated to the former wife's having an interest in DROP. The opinion states:
The Former Husband concedes that the funds deposited into DROP are retirement benefitsbenefits that would have been paid each month to the Former Husband and Former Wife had the Former Husband not elected to participate in DROP and had instead simply retired.

Ganzel, 770 So.2d at 306 (emphasis added). It is clear that this concession covers only what is elementary to all plans: payments into DROP are merely deferred retirement benefits from which, but for DROP participation, each former spouse would receive his or her pro-rata share immediately. Accordingly, the concession only established for the court what is well-known.
Finally, we disagree with the dissent that the primary issue in Ganzel was alimony. The court itself stated that the Ganzel litigation was precipitated by a letter from the Florida Division of Retirement informing the former husband that his former wife, under the terms of the QDRO, would be receiving her pro-rata share of the former husband's DROP benefits, just as the trial court determined here. We conclude from this language that contrary to the dissent, the central issue in Ganzel was the parties' interest in the DROP account, and the alimony issue was only obliquely involved based on the former wife's need for alimony as impacted by receipt of her retirement benefits, including those in DROP.

CERTIFICATION
Because of the numerous participants in DROP accounts similarly situated to these parties, we certify the following question to be one of great public importance:
IS A SPOUSE WHO IS AWARDED A PORTION OF THE OTHER SPOUSE'S PENSION AT THE TIME OF DISSOLUTION ENTITLED TO SHARE IN A DROP ACCOUNT CREATED, INCLUDING INTEREST AND COLAS, SOMETIME AFTER THE DISSOLUTION HAS BECOME FINAL?

DISPOSITION
We AFFIRM on the original appeal, REVERSE on the cross-appeal, and REMAND *453 for proceedings consistent with this opinion.
ALLEN, WEBSTER, DAVIS, BENTON, PADOVANO, LEWIS, POLSTON, HAWKES, and THOMAS, JJ., concur.
KAHN, C.J., concurring in part and dissenting in part with opinion.
WOLF, J., concurring in part and dissenting in part with opinion, and ERVIN, BARFIELD, and VAN NORTWICK, JJ., concur.
KAHN, C.J., concurring in part and dissenting in part.
I agree with the majority's opinion affirming that portion of the trial court's order allowing Mrs. Pullo to collect her share of Mr. Pullo's retirement benefit effective January 2000. I disagree with the majority, however, that we should reverse on the cross-appeal and allow Mrs. Pullo full participation in the DROP account. I conclude that a portion of the money paid by Mr. Pullo into his DROP account is, in fact, the marital asset referenced in paragraph 17 of the Final Judgment of Dissolution of Marriage. Because the Final Judgment does not contemplate that additional benefits, such as interest or COLAs, would be treated as marital assets, I would affirm on the cross-appeal.
The threshold question in this case is quite straightforwardis Mrs. Pullo entitled to her predetermined share of Mr. Pullo's pension/retirement benefit as of January 2000, the date Mr. Pullo commenced participation in the DROP program? We should answer this question in the affirmative because the moneys deposited by Mr. Pullo into the DROP account are, in fact, part of his "Pension/retirement benefit," and thus, under the final judgment, have been subjected to equitable distribution. On the other hand, the additional benefits provided by the DROP program, apart from the contribution of pension moneys, are not marital assets that were distributed by the final judgment.
I cannot agree with Judge Wolf's view that none of the DROP contributions prior to 2005 are marital property. The final judgment, which we all agree controls, simply provides that Mrs. Pullo will receive $1,192.88 per month upon Mr. Pullo's retirement, because of her entitlement to "33% of the Husband's City of Jacksonville Pension/retirement benefit." However one wishes to characterize Mr. Pullo's status commencing in January 2000, he began to receive retirement benefits as of that date. Although his right to possession of those benefits may have been deferred pursuant to Jacksonville's ordinance, those very benefits funded the DROP account. The trial court quite correctly determined that a result allowing Mr. Pullo to retain 100% of those retirement benefits contravenes the plain language of the final judgment.
I conclude that requiring the former wife's participation in the DROP account is actually a prohibited modification of a distribution of marital property. Florida courts uniformly agree that section 61.14(1), Florida Statutes, does not allow modification of a property distribution. See, e.g., Hulse v. Hulse, 873 So.2d 542, 543 (Fla. 1st DCA 2004) (observing that monthly amounts received as equitable distribution from husband's retirement pay "were non-modifiable property distributions"); Spano v. Spano, 698 So.2d 324, 327 (Fla. 4th DCA 1997) ("[A] property distribution under chapter 61 is quite different than alimony, child support, or child custody and visitation as regards the ability to modify a judgment. . . . Section 61.14 makes clear that only alimony and child support, or child custody, or child visitation may be modified after final judgment. *454 In other words, under chapter 61 the property distribution is conclusive with the final judgment. A property distribution under section 61.075 may not be modified even if the needs of a party change after the judgment.") disapproved on other grounds, Bane v. Bane, 775 So.2d 938, 943-44 (Fla.2000); McAvoy v. McAvoy, 662 So.2d 744, 745 (Fla. 5th DCA 1995) ("[T]he parties are entitled to a final distribution of their assets and liabilities at the time of dissolution."); Masters v. Masters, 443 So.2d 388, 389 (Fla. 2d DCA 1983) (finding that equitable distribution of property acquired during the marriage gives rise to "a vested right which was not subject to modification").
Contrary to the assertion in the majority opinion, the accouterments of a DROP account should not, in this case, be seen as marital assets. Mrs. Pullo received an award that allowed her a sum certain of pension/retirement benefits. She did not receive, as a result of the dissolution decree, any entitlement to guaranteed interest accruals or cost-of-living adjustments on those benefits. These matters are purely creatures of the DROP account itself. As Judge Wolf's dissent observes, Mrs. Pullo's automatic entitlement to these amounts is prohibited by Boyett v. Boyett, 703 So.2d 451 (Fla.1997). For this reason, I disagree with the majority that Mrs. Pullo is entitled to full participation in the DROP account. I would affirm in its entirety the trial court's treatment of the DROP contributions.
WOLF, J., Concurring in part and Dissenting in part.
I would reverse that portion of the trial court's order awarding the former wife portions of the former husband's DROP account. I would not reach the issue on cross-appeal. In all other respects, I concur with the majority opinion.
The determination of whether the former wife was entitled to a portion of the former husband's DROP account involved interpretation of the dissolution judgment. Thus, the trial court's order on this point is subject to the de novo standard of review. See Geiger v. Geiger, 632 So.2d 693, 695 (Fla. 1st DCA 1994); see also Ballantyne v. Ballantyne, 666 So.2d 957, 958 (Fla. 1st DCA 1996).
In Boyett v. Boyett, 703 So.2d 451 (Fla. 1997), the Florida Supreme Court held that "the valuation of a vested retirement plan is not to include any contributions made after the original judgment of dissolution." Id. at 452. In reaching this conclusion, the supreme court disapproved this court's decision in DeLoach v. DeLoach, 590 So.2d 956 (Fla. 1st DCA 1991), which had adopted a differing valuation formula for retirement benefits subject to distribution in a dissolution proceeding. See Boyett, 703 So.2d at 451-52.
In Blevins v. Blevins, 649 So.2d 315 (Fla. 1st DCA 1995), this court held that a former wife was not entitled to any interest in a retirement benefit acquired by the former husband after dissolution of the parties' marriage. The former husband in Blevins worked for General Motors (GMAC) at the time he divorced the former wife, and the trial court awarded the former wife a portion of the former husband's pension plan with GMAC that had accrued during the parties' marriage. The former husband was subsequently "forced to retire early from GMAC at age 51, pursuant to the terms of an agreement between GMAC and the United Auto Workers Union (UAW)." Id. at 316. "That agreement provided for the payment of `basic' retirement benefits for life based on years of service, in addition to `temporary' benefits to be paid monthly until the age of 62 when the employee becomes eligible to receive social security benefits." *455 Id. In post-dissolution proceedings, the trial court awarded the former wife not only a portion of the former husband's "basic" retirement benefits, but also a portion of his "temporary" retirement benefits acquired as a result of the post-dissolution agreement between GMAC and the UAW.
On appeal, this court reversed the award to the former wife of a portion of the former husband's "temporary" retirement benefits "because those benefits were not accrued during the parties' marriage." Id. at 317. This court explained that the former husband's right to the "temporary" retirement benefits "arose by reason of an agreement negotiated and entered into after the dissolution of the parties' marriage." Id.; see also Olsen v. Keefer, 714 So.2d 1165, 1166 (Fla. 1st DCA 1998) (holding that, in accordance with Boyett and Blevins, former wife had no interest in retirement benefits "accrued after dissolution of the parties' marriage, including increased benefits from a subsequently adopted collective bargaining agreement").
While there are definite differences between the DROP in this case, and the collective bargaining agreements at issue in Blevins and Olsen, the salient characteristics of both are the same for purposes of the issue presented here, making Blevins and Olsen controlling. First, the DROP fund at issue here did not exist at the time the parties divorced; second, the specific terms of the DROP plan as well as testimony from the former husband and his expert establish that the former husband gave up any further increases in his defined pension benefit in order to enter DROP. In other words, after dissolution, he entered into an agreement with his employer whereby he agreed to give up a future benefit (belonging only to him by virtue of the supreme court's holding in Boyett) in exchange for the benefits provided under DROP. As such, the funds available to the former husband by virtue of the City's DROP are the result of a post-dissolution agreement between him and the City, resulting in an additional retirement benefit payable to him upon retirement. Because the DROP benefit exists in addition to, and not instead of, the former husband's defined pension benefit, the trial court erred in determining that the amounts accruing monthly in the former husband's DROP account were the "functional equivalent" of his defined pension benefit. Cf. Kelson v. Kelson, 675 So.2d 1370, 1372 (Fla.1996) (holding that former husband's Voluntary Separation Incentive Program (VSI) benefit, obtained by him upon his early separation from the United States Marine Corps in lieu of any military retirement benefit, was the "functional equivalent" of the "retired pay" the former wife was awarded a portion of in the parties' dissolution judgment, because "[i]f we were to hold otherwise a service-member spouse would be able to defeat the other spouse's court-awarded interest in military retirement benefits by unilaterally altering the form of those benefits in a manner that was unforeseeable at the time the award was made").
The position taken within the majority opinion reflects a fundamental misunderstanding of the practical effect of the former husband's decision to participate in the DROP. While the former husband's decision to participate in the DROP increased the value of his share of his employer-based pension, it left the former wife's interest unaffected. The former wife was awarded $1,192.80 per month as her share of the value of the former husband's pension at the time of dissolution payable upon his retirement. In January 2000, the former husband elected to participate in the DROP. Had the former husband worked for five more years with the City of Jacksonville without entering the DROP, the former wife would still have *456 received $1,192.80 per month beginning in January 2005, and the former husband's share of his retirement (in which the former wife had no interest) would have grown to reflect the additional years of service and commensurate increase in his average compensation rate over those five years. Thus, when the former husband elected to participate in the DROP and continue working for five additional years beginning in January 2000, the former wife's awarded interest in his pension remained unaffected.
Under the terms of the dissolution judgment, the former wife began to receive $1,192.80 per month in January 2005 as her share of the former husband's pension; this is the same amount she would have collected beginning at the same time had the former husband not chosen to participate in the DROP. The former husband therefore clearly gave up only his interest in any growth in his share of the pension as a result of his participation in the DROP, and therefore only he is entitled to that additional benefit.
The foregoing analysis is not in conflict with the decisions in Ganzel v. Ganzel, 770 So.2d 304 (Fla. 4th DCA 2000), or Swanson v. Swanson, 869 So.2d 735 (Fla. 4th DCA 2004), relied on by the former wife in her brief. The issue in Ganzel was not whether the former wife in that case was entitled to a portion of the former husband's post-dissolution DROP fund pursuant to the terms of the parties' dissolution judgment; the former husband in that case agreed that the funds deposited into his DROP account were retirement benefits subject to the distribution scheme set forth in the parties' dissolution judgment. Instead, the issue in Ganzel was whether the former wife was entitled to continue receiving alimony benefits pursuant to the terms of the parties' dissolution judgment while at the same time having her conceded share in the DROP account earning interest. The Fourth District Court of Appeal determined in Ganzel that the former wife could continue receiving alimony pursuant to the terms of the parties' dissolution judgment even though her conceded share of the DROP fund was earning interest. See Ganzel, 770 So.2d at 306.
Similarly, while there is gratuitous language in Swanson v. Swanson, 869 So.2d 735 (Fla. 4th DCA 2004), indicating that the former wife's "share" of the former husband's "pension benefits" was "accumulating" in the former husband's post-dissolution DROP account, the issue in Swanson was again not whether the former wife was entitled to a portion of the DROP fund pursuant to the terms of the parties' dissolution judgment, but rather the appropriateness of the trial court's valuation of the parties' respective shares of one another's retirement benefits, the propriety of the immediate offsets of those values calculated by the trial court, and whether the former wife was entitled to interest and COLAs on her apparently conceded share of the accrued benefits in the DROP fund. See id. at 736-38.
Ganzel and Swanson appear to be the only cases in Florida discussing the treatment of DROP accounts created after dissolution. However, three other states have confronted this issue, with California and Louisiana[2] determining that DROP funds created after divorce are subject to division pursuant to the terms of a dissolution judgment distributing the parties' retirement or pension benefits as they existed at the time of divorce, and Wisconsin *457 taking a contrary view. Compare In Re Marriage of Davis, 120 Cal.App.4th 1007, 16 Cal.Rptr.3d 220, 227-28 (2004) (holding that former wife "undisputedly own[ed] a community property interest in [former husband's] retirement benefits, and therefore own[ed] a community property interest in his retirement benefits as enhanced" by his post-dissolution participation in his employer's DROP) and Bailey v. Bailey, 708 So.2d 354, 357 (La.1998) (holding that former wife had "right to receive the funds in the [former husband's post-dissolution] DROP account, at least the portion attributable to [the former husband's] labor and efforts and retirement contributions during the existence of the community prior to entering the DROP program") with Winkler v. Winkler, 282 Wis.2d 746, 699 N.W.2d 652 (2005) (declining to reopen and modify property division in parties' dissolution judgment in order to distribute the post-dissolution fund created in favor of the former husband by a variation on a DROP plan, on grounds that "[w]ere we to now conclude, as [the former wife] urges, that post-divorce employer modification of pension payout terms, years after a divorce, compels reopening of the divorce Judgment, finality in division of retirement benefits would essentially evaporate"). Our supreme court's decision in Boyett requires us to reject the approach taken in California and Louisiana and to reverse that portion of the trial court's order awarding a portion of the DROP account to the former wife.
NOTES
[1] The original panel made a determination in this case; however, before the opinion was released, another panel determined another case in direct conflict with this case. Accordingly, the en banc process was invoked to resolve the conflict.
[2] Louisiana appears to have the most well-developed law in this area because the concept of DROP began in that state in the mid-1980's in connection with pension plans administered for police and fire personnel.