OSCN Found Document:BAGGS v. BAGGS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 BAGGS v. BAGGS
2016 OK 117
Case Number: 111780
Decided: 11/15/2016
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2016 OK 117, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

IN RE THE MARRIAGE OF:

JENNIFER D. BAGGS, Petitioner/Appellant,
v.
STEVEN J. BAGGS, Respondent/Appellee.

APPEAL FROM THE DISTRICT COURT OF CANADIAN COUNTY

Honorable Gary D. McCurdy, Trial Judge

¶0 The petitioner/appellant, Jennifer D. Baggs (wife), filed for divorce from her firefighter husband, the respondent/appellee, Steven J. Baggs (husband). As part of the firefighter retirement plan, the husband was vested in what is known as a DROP or Plan B option created specifically for Oklahoma Firefighters pursuant to 11 O.S. 2011 §49-100 et seq. Plan B is an alternative option for firefighters' pensions available when a vested firefighter retires. It is not funded until the firefighter chooses the Plan B retirement alternative. The wife sought any portion of the Plan B which would be attributable to the years in which she and the husband were married, in the event he chooses Plan B when he retires, after the divorce is granted. The trial court declined to divide the Plan B option as marital property and the Court of Civil Appeals affirmed. We hold that, in the event the Plan B option is chosen by a vested former spouse when the firefighter retires, it is divisible to the extent that any funds deposited into it are attributable to the marital years.

CERTIORARI PREVIOUSLY GRANTED; 
COURT OF CIVIL APPEALS VACATED IN PART;
TRIAL COURT REVERSED;
CAUSE REMANDED WITH INSTRUCTIONS.

Ann Hadrava, Edward Goldman, Oklahoma City, Oklahoma, for Petitioner/Appellant.
Sherman A. Reed, Edmond, Oklahoma, for Respondent/Appellee.

KAUGER, J.:

¶1 The first impression issue on appeal is whether a firefighter's alternative DROP/Plan B retirement option is divisible in a divorce, even though the option may or may not be chosen by the firefighter at retirement?[1] We hold that in the event the Plan B option is chosen by the firefighter upon retirement, it is divisible to the extent any funds were deposited into it attributable to the marital years.

FACTS

¶2 The petitioner/appellant, Jennifer D. Baggs (wife) married the respondent/appellee, Steven J. Baggs (husband) on October 17, 1995. The couple had two children together, a daughter and a son.[2] After approximately the first 18 months of marriage, the wife did not work outside the home during the marriage. Rather, she "ran the home," took care of the finances and the children, and home schooled the children. The husband had been employed with the Oklahoma City Fire Department for approximately five years prior to the marriage, and he continued to work there throughout the marriage. He also worked a secondary job as an adjunct instructor at Oklahoma State University (OSU) in Oklahoma City for nearly a decade during the marriage, and he intermittently did yard and handyman work for extra money as well.

¶3 The wife filed for divorce in the District Court of Canadian County, Oklahoma on July 8, 2011. In August of 2011, the wife started nursing school at OSU in Oklahoma City in an attempt to become a registered nurse by 2016. She paid for school with loans and grants. The judge held a trial on July 27, 2012. At the beginning of the trial, counsel for the wife informed the court that the parties had reached an agreement regarding custody of the children, and the husband's 457 deferred compensation retirement account. Both parties agreed to joint custody of both children, with the father primary joint custodial residential parent of the girl, the mother primary joint custodial residential parent of the boy, and each parent having standard visitation of the child who was not in their primary custody. The counsel also noted that court had already signed a Qualified Domestic Relations Order (QDRO) regarding the deferred compensation account, and that it had already been submitted to the Oklahoma City Fire Department pension board.

¶4 The parties also agreed that the wife would be awarded the marital residence, and that she had already redeemed it from foreclosure by paying nearly $16,000.00 which she borrowed from family members. The remainder of the trial concerned alimony, child support, real property and personal property division, and other financial issues, as well as discussion of the value of the husband's pension with the Fire Department. In addition to his deferred compensation plan in which the parties had reached a division settlement, the husband, when he chooses to retire, will have the option to make an election between a traditional pension retirement and what is known as a Plan B or Deferred Retirement Option Plan (DROP/Plan B) which we detail forthcoming.

¶5 The wife sought any portion of the Plan B which might be attributable to the marital years, in the event the husband later decides to chose this retirement option after the divorce is granted. On April 24, 2013, the trial court issued the decree of dissolution of marriage, and awarded the wife ½ of the husbands retirement benefits, but declined to award any interest in a DROP/Plan B option stating:

The Court herein declines to order Respondent to change the current form of the fund since this Court believes that it should not make investment decisions for the Parties, but it is empowered to equitably divide the marital assets as they currently exist.

¶6 The Court of Civil Appeals affirmed the trial court in so far as the Plan B issue was concerned and modified the trial court's property division. Regarding the Plan B, the appellate court relied on Ballinger v. Ballinger, 2014 OK CIV APP 92, 340 P.3d 644, a strikingly similar case in which the court determined that the Plan B retirement option available to a spouse post divorce is not divisible. The wife appealed on March 2, 2016. We granted certiorari on September 20, 2016, to address the first impression question of the divisibility of the DROP/Plan B option.

IN THE EVENT THE PLAN B OPTION IS CHOSEN BY A FIREFIGHTER
UPON RETIREMENT, IT IS DIVISIBLE TO THE EXTENT ANY FUNDS
WERE DEPOSITED INTO IT ATTRIBUTABLE TO THE MARITAL
YEARS. 

¶7 The wife argues that: 1) the husband became vested during their marriage to be eligible to elect the Plan B when he retires; 2) if he does elect Plan B, it will then be funded and a portion of those funds are attributable to the pension he accrued during the marriage; and 3) because it was partially accrued during the marriage, it is at least partially marital property. She also argues that the fact that Plan B is a contingency that the husband has yet to enroll in is irrelevant, and does not cause the loss of its marital character. The husband argues that because there is no Plan B account in existence as of the date of the parties divorce, there can be no distribution to the wife. He insists that there is no reason to require a court to speculate about a contingent future distribution of a non-existent retirement benefit.

A. The DROP (Deferred Retirement Option Plan)/ Plan B.

¶8 Title 11 O.S. 2011 §§49-100.1 - 143.6. govern the Oklahoma Firefighters Pension and Retirement System (the System).[3] The eligible retirement date for a member of the System is the date in which the member completes 20 years of credited service or 22 years of credited service plus attainment of the age 50, depending on whether the member's start date is before or after November 1, 2013.[4] Under the traditional path to retirement, any firefighter who reaches the retirement date and retires from service, is paid a monthly pension equal to their accrued retirement benefit.[5]

¶9 An alternative to the traditional route is that a member may elect to participate in what is known as the DROP or commonly called Plan B. Under the DROP plan, in lieu of terminating employment and accepting the traditional retirement pension,[6] an eligible member may elect to defer the receipts of benefits under the plan and continue working, but not continue to increase their years of credible service.[7] Eligibility under this plan is also 20 years of credible service or 22 years, if employment was on or after November 1, 2013.[8] The duration of participation may not to exceed five years and, at the conclusion of participation, employment terminates.[9]

¶10 When the member participates in the DROP, the contributions of the member cease, but the employer contributions continue and interest are credited to the DROP account.[10] The monthly traditional retirement benefits that would have been payable had the firefighter chosen to retire on the date they join the DROP plan are deposited into the DROP account.[11] This is the first time the DROP account is funded.

 

¶11 At the end of the DROP period (not more than five years), the participant may then receive a lump-sum payment from the account equal to the payments which were made into the account.[12] In other words, once a firefighter is vested in the pension system, he or she will also be eligible to elect the DROP plan when the firefighter retires. The day the firefighter does elect the DROP plan, their pension payments would be calculated and deposited monthly into the DROP account as long as the firefighter continues to work for up to 60 months maximum. Employer contributions and interest are also credited to the account. Upon leaving employment, the firefighter would then receive both a lump-sum payment, and a monthly pension payment (calculated as if they had retired on the day they elected to participate in the DROP plan.)[13]

¶12 Enrolling in the DROP is merely another way for firefighters to begin receiving pension benefits. The advantage of not opting to do the DROP would be a higher pension benefit based on a longer number of credible service years. On the other hand, the advantage of opting to do the DROP, would be receiving a lump-sump payment, and continuing to receive a salary for a few extra years, even though ultimately, the monthly pension benefit would be lower than if they had started collecting traditional retirement benefits.

B. Retirement Benefits May be Divisible Marital Property Even if 
They Rest on a Contingency Such as Plan B.

¶13 A district court possesses power in a divorce proceeding to divide the marital estate.[14] Title 43 O.S. 2011 §121 requires a fair and just division of jointly acquired property upon divorce.[15] While §121 has specific provisions for military retirement, it does not generally address any pensions much less "contingent" type pensions such as the Plan B.[16] 

¶14 Generally, a pension right burdened with a conjugal interest is a type of marital asset divided between the parties to a divorce.[17] We have said that "absent a specific statutory exception. . . a trial court may consider the pension as jointly acquired, make a grant of that property to one spouse and then make a compensating award to the other spouse."[18] The contingent nature of a pension is irrelevant. For example, in Carpenter v. Carpenter, 1983 OK 2, 657 P.2d 646, we addressed pensions acquired through spousal efforts during the marriage and determined them to be divisible marital property under the predecessor to 43 O.S. 2011 §121.[19]

¶15 Carpenter concerned the divorce of a couple who had been married for thirty-six years. At the time of the divorce, the husband had a pension and a profit sharing plan, in which he was a participant, with benefits paying upon his death, disability or retirement. The trial court held that the profit sharing plan was divisible marital property. The Court affirmed, stating:

¶23 In addressing this issue, we do not deem it significant whether the pension is "vested" in the sense that it is now due and owing, whether it is conditional or contingent upon continued employment for a prescribed period or terminable upon the occurrence nor non-occurrence of some future event. (See In Re Marriage of Brown, 15 Cal.3d 838, 126 Cal. Rptr. 633, 544 P.2d 561 (1976); Hutchins v. Hutchins, 71 Mich. App. 361, 248 N.W.2d 272 (1977).) In any of these events, it is a valuable right which has been purchased through joint efforts of the spouses to the extent that it has been acquired or enhanced during the marriage, and as such becomes jointly acquired property during the marriage. DeRevere v. DeRevere, 5 Wash. App. 741, 491 P.2d 249 (1971).[20]

 

¶24 The practical problems inherent in "dividing" a pension which is unmatured or contingent at the time of a divorce are resolved within the language of 12 O.S. 1981 § 1278 itself. It must be divided between the parties "as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof."

 

¶16 The Oklahoma Firefighter Pension and Retirement System, 11 O.S. 2011 §49-126 expressly addresses the divisibility of firefighter pensions as marital property. It provides for qualified domestic orders, and recognizes former spouses as alternative payees to pension benefits which have been determined to be marital property.[21] Included within its provisions is the express recognition that the DROP/Plan B retirement option is divisible marital property to the extent any benefits which are deposited into it were accumulated during the marriage. Title 11 O.S. 2011 §49-126(9) provides:

The alternate payee [former spouse] shall have a right to receive benefits payable to a member of the System under the Oklahoma Firefighters Deferred Option plan provided for pursuant to Section 49-106.1 of this title, but only to the extent such benefits have been credited or paid into the member's Oklahoma Firefighters Deferred Option Plan account during the term of the marriage.

Clearly, the Plan B retirement option is divisible marital property because when it is chosen, it is then partially funded with a portion of retirement funds which are attributable to the marital years. The technicality here is simply that it cannot be divided until, at some point in the future, it is chosen, even if that choice occurs post-divorce.

¶17 Other courts have unanimously determined, under similar DROP systems to Oklahoma's, that a spouse is entitled to a portion of that part of their ex-spouse's retirement benefits which are attributable to the marital estate, even if the ex-spouse elects the retirement option deferred plan after the divorce.[22] The only case which does not fall in line with these other courts and our prior caselaw is the Oklahoma Court of Civil Appeals case of Ballinger v. Ballinger, 2014 OK CIV APP 92, 340 P.3d 644, which has facts strickingly similar to this cause. To the extent Ballinger can be read to preclude equitable division of a DROP retirement plan, it is hereby overruled.

¶18 Implicit in the rationale of Carpenter v. Carpenter, 1983 OK 2, 657 P.2d 646, is the idea that pensions, contingent upon the occurrence or non-occurrence of some future event, are valuable rights if the contingency has been acquired through joint efforts of the spouses -- to the extent that it has been acquired or enhanced during the marriage, and as such becomes jointly acquired property during the marriage. Pursuant to 11 O.S. 2011 §49-126(9), supra, firefighter DROP benefits were contemplated by the Legislature as being divisible marital property.

¶19 Firefighter pension rights are vested when a firefighter retires or could retire because the firefighter is eligible for pension benefits.[23] In this cause, the firefighter husband had worked as a firefighter for five years prior to the marriage and an additional sixteen years during the marriage giving him the minimal twenty years necessary, by the time the divorce was filed, to vest in his pension benefits and to vest in his ability to select the Plan B option upon retirement. Although the Plan B is not immediately divisible because it has not yet been funded, or selected, if it is chosen upon his retirement, the former wife is entitled to any portions thereof which were accrued during the marriage. While this calculation may not be easy to make, it is not impossible, nor is its difficulty a reason to deny to the wife what is fair, just and reasonable. Accordingly, the cause is reversed and remanded to the trial court to enter a final divorce decree which protects the wife's interest in the Plan B retirement option should the husband chose to retire and select this option upon his retirement.

CONCLUSION 

¶20 A district court possesses power in a divorce proceeding to divide the marital estate.[24] Title 43 O.S. 2011 §121 requires a fair and just division of jointly acquired property upon divorce.[25] Generally, a pension right burdened with a conjugal interest is a type of marital asset divided between the parties to a divorce.[26]

¶21 Under the rationale of Carpenter v. Carpenter, 1983 OK 2, 657 P.2d 646, pensions contingent upon the occurrence or non-occurrence of some future event, are valuable rights if the contingency has been acquired through joint efforts of the spouses during the marriage, and as such becomes jointly acquired property during the marriage. Pursuant to 11 O.S. 2011 §49-126(9), supra, firefighter DROP benefits were contemplated by the Legislature as being divisible marital property. Consequently, the cause is reversed and remanded to the trial court to enter a final divorce decree which protects the wife's interest in the Plan B retirement option should the husband chose to retire and select this option upon his retirement.

CERTIORARI PREVIOUSLY GRANTED; 
COURT OF CIVIL APPEALS VACATED IN PART;
TRIAL COURT REVERSED;
CAUSE REMANDED WITH INSTRUCTIONS.

ALL JUSTICES CONCUR.

FOOTNOTES

[1] In the Petition in Error filed May 17, 2013, the wife raised thirteen issues on appeal. After the Court of Civil Appeals decided the cause, the wife, in her Petition for Certiorari filed March 2, 2016, raised only the first impression issue of the divisibility of the DROP?Plan B option. This issue is dispositive. Nevertheless, this Court affords certiorari claimants review of issues undecided in an appeal which are properly preserved and briefed. Hough v. Leonard, 867 P.2d 438, 445-46 (Okla.1993). Today's decision vacates only that portion of the Court of Civil Appeals opinion addressing the DROP/Plan B property division and leaves in tact the remaining property division issues also addressed by the Court of Civil Appeals.

[2] At the time of the divorce trial, the daughter was 16 and the son was 14. The father also had a son from a previous relationship who attended college.

[3] Title 11 O.S. 2011 §§49-100.1 - 143.6. Title 11 O.S. Supp. 2013 §49-100.1 provides in pertinent part:

As used in this article:

1. "System" means the Oklahoma Firefighters Pension and Retirement System and all predecessor municipal firefighters pension and retirement systems;

2. "Article" means Article 49 of this title;

3. "State Board" means the Oklahoma Firefighters Pension and Retirement Board;

4. "Local board" means the local firefighters pension and retirement boards;

5. "Fund" means the Oklahoma Firefighters Pension and Retirement Fund; . . .

[4] Title 11 O.S. Supp. 2013 §49-100.1 provides in pertinent part:

. . .6. "Member" means all eligible firefighters of a participating municipality or a fire protection district who perform the essential functions of fire suppression, prevention, and life safety duties in a fire department. The term "member" shall include but not be limited to the person serving as fire chief of any participating municipality, provided that a person serving as fire chief of a participating municipality shall meet the age, agility, physical and other eligibility requirements required by law at the time said person becomes a member of the System. Effective July 1, 1987, a member does not include a "leased employee". The term "leased employee" means any person (other than an employee of the recipient) who pursuant to an agreement between the recipient and any other person ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Section 414(n)(6) of the Internal Revenue Code of 1986, as amended) on a substantially full-time basis for a period of at least one (1) year, and such services are performed under primary direction or control by the recipient. Contributions or benefits provided a leased employee by the leasing organization which are attributable to services performed for the recipient employer shall be treated as provided by the recipient employer. A leased employee shall not be considered an employee of the recipient if the requirements of the safe harbor provisions of Section 414(n)(5) of the Internal Revenue Code of 1986, as amended, are satisfied. Effective July 1, 1999, any individual who agrees with the participating municipality that the individual's services are to be performed as a leased employee or an independent contractor shall not be a member regardless of any classification as a common law employee by the Internal Revenue Service or any other governmental agency, or any court of competent jurisdiction;

7. "Normal retirement date" means the date at which the member is eligible to receive the unreduced payments of the member's accrued retirement benefit. Such date shall be the first day following the date the member completes twenty (20) years of credited service. For a member whose first employment with a participating employer of the System occurs on or after November 1, 2013, such date shall be the first day following the date the member completes twenty-two (22) years of credited service and has attained the age of at least fifty (50) years. If the member's employment continues past the normal retirement date of the member, the actual retirement date of the member shall be the first day following the date the member terminates employment with more than twenty (20) years of credited service, or with respect to members who are required to complete twenty-two (22) years of service, the first day following the date the member terminates employment with more than twenty-two (22) years of service and who has also attained the age of at least fifty (50) years; . . .

[5] Title 49 O.S. 2011 §49-106 provides in pertinent part:

A. Any firefighter who reaches the firefighter's normal retirement date shall be entitled, upon written request, to retire from such service and be paid from the System a monthly pension equal to the member's accrued retirement benefit; provided, that the pension shall cease during any period of time the member may thereafter serve for compensation in any municipal fire department in the state. If such a member is reemployed by a participating municipality in a position which is not covered by the System, retirement shall also include receipt by such member of in-service distributions from the System. . . .

[6] Title 11 O.S. 2001 §49-101-106.

[7] Title 49 O.S. Supp. 2014 §49-106.1 provides in pertinent part:

A. In lieu of terminating employment and accepting a service retirement pension pursuant to Sections 49-101 and 49-106 of this title, any member of the Oklahoma Firefighters Pension and Retirement System serving as an active firefighter in a fire department of a participating municipality who has not less than twenty (20) years of creditable service, or any member of the Oklahoma Firefighters Pension and Retirement System whose first employment with a participating employer of the System occurs on or after November 1, 2013, and who has not less than twenty-two (22) years of creditable service and who is eligible to receive a service retirement pension may elect to participate in the Oklahoma Firefighters Deferred Option Plan and defer the receipts of benefits in accordance with the provisions of this section. . . .

[8] Title 49 O.S. Supp. 2014 §49-106.1, see note 7, supra.

[9] Title 49 O.S. Supp. 2014 §49-106.1 provides in pertinent part:

. . .C. The duration of participation in the Oklahoma Firefighters Deferred Option Plan for active firefighters shall not exceed five (5) years. Participation in the Oklahoma Firefighters Deferred Option Plan must begin the first day of a month and end on the last day of a month. At the conclusion of a member's participation in the Oklahoma Firefighters Deferred Option Plan, the member shall terminate employment with all participating municipalities as a firefighter, and shall start receiving the member's accrued monthly retirement benefit from the System. Such a member may be reemployed by a participating municipality but only in a position not covered under the System, and receive in-service distributions of such member's accrued monthly retirement benefit from the System. . . .

[10] Title 49 O.S. Supp. 2014 §49-106.1 provides in pertinent part:

. . . D. When a member begins participation in the Oklahoma Firefighters Deferred Option Plan, the contribution of the member shall cease. The employer contributions shall continue to be paid in accordance with subsection B of Section 49-122 of this title. Employer contributions for members who elect the Oklahoma Firefighters Deferred Option Plan shall be credited equally to the Oklahoma Firefighters Pension and Retirement System and to the member's Oklahoma Firefighters Deferred Option Plan account. The monthly retirement benefits that would have been payable had the member elected to cease employment and receive a service retirement shall be paid into the member's Oklahoma Firefighters Deferred Option Plan account. . . .

[11] Title 49 O.S. Supp. 2014 §49-106.1, see not 7, supra.

[12] Title 49 O.S. Supp. 2014 §49-106.1 provides in pertinent part:

. . .F. A member in the plan shall receive, at the option of the member, a lump-sum payment from the account equal to the payments to the account or an annuity based upon the account of the member or may elect any other method of payment if approved by the Board of Trustees. If a member becomes so physically or mentally disabled while in, or in consequence of, the performance of his or her duty as to prevent the effective performance of his or her duties that the State Board approves an in-line-of-duty disability pension, the payment from the account shall be an in-line-of-duty disability payment. Notwithstanding any other provision contained herein to the contrary, commencement of distributions under the Oklahoma Firefighters Deferred Option Plan shall be no later than the time as set forth in subsection B of Section 49-106 of this title and a member whose first service with a participating municipality of the System occurs on or after November 1, 2013, and who participates for the first time in the Oklahoma Firefighters Deferred Option Plan on or after November 1, 2013, must receive a distribution of the entire remaining balance in the member's Oklahoma Firefighters Deferred Option Plan account no later than April 1 of the calendar year following the later of:

1. The calendar year in which the member reaches seventy and one-half (70 1/2) years of age; or

2. The actual retirement date of the member. . . .

[13] Title 11 O.S. Supp. 2014 §49-106.1 also has an additional alternative which involves a "back drop date," which gives the firefighter the option of back dating their election of DROP in order to receive benefits. The statute provides in pertinent part:

H. In lieu of participating in the Oklahoma Firefighters Deferred Option Plan pursuant to subsections A, B, C, D, E and F of this section, a member may elect to participate in the Oklahoma Firefighters Deferred Option Plan pursuant to this subsection as follows:

1. For purposes of this subsection and subsection I of this section, the following definitions shall apply:

a. "back drop date" means the member's normal retirement date or the date five (5) years before the member elects to participate in the Oklahoma Firefighters Deferred Option Plan, whichever date is later,

b. "termination date" means the date the member elects to participate in the Oklahoma Firefighters Deferred Option Plan pursuant to this subsection, and the date the member terminates employment with all participating municipalities as an active firefighter,

c. "earlier attained credited service" means the credited service earned by a member as of the back drop date, and

d. "deferred benefit balance" means all monthly retirement benefits that would have been payable had the member elected to cease employment on the back drop date and receive a service retirement from the back drop date to the termination date, all the member's contributions and one-half (1/2) of the employer contributions from the back drop date to the termination date, with interest based on how the benefit would have accumulated on a compound annual basis as if the member had participated in the Oklahoma Firefighters Deferred Option Plan pursuant to subsections A, B, C, D, E and F of this section from the back drop date to the termination date; and

2. At the termination date, the monthly pension benefit shall be determined based on earlier attained credited service and on the final average salary as of the back drop date. The member's individual deferred option account shall be credited with an amount equal to the deferred benefit balance, the member shall terminate employment with all participating municipalities as a firefighter, and shall start receiving the member's accrued monthly retirement benefit from the System. Such a member may be reemployed by a participating municipality but only in a position not covered under the System, and receive in-service distributions of such member's accrued monthly retirement benefit from the System. The provisions of subsections B, C, E, F and G of this section shall apply to this subsection. A member shall not participate in the Oklahoma Firefighters Deferred Option Plan pursuant to this subsection if the member has elected to participate in the Oklahoma Firefighters Deferred Option Plan pursuant to subsections A, B, C, D, E and F of this section.

[14] Tubbs v. State of Oklahoma ex rel. The Teachers' Retirement System of Oklahoma, 2002 OK 79, ¶9, 57 P.3d 571; Larman v. Larman, 1999 OK 83, ¶17, 991 P.2d 536.

[15] Title 43 O.S. 2011 §121 provides in parts A and B:

A. When a dissolution of marriage is granted, the decree shall restore:

1. To the wife her maiden or former name, if her name was changed as a result of the marriage and if she so desires;

2. To the husband his former name, if his name was changed as a result of the marriage and if he so desires.

B. The court shall enter its decree confirming in each spouse the property owned by him or her before marriage and the undisposed-of property acquired after marriage by him or her in his or her own right. Either spouse may be allowed such alimony out of real and personal property of the other as the court shall think reasonable, having due regard to the value of such property at the time of the dissolution of marriage. Alimony may be allowed from real or personal property, or both, or in the form of money judgment, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall, subject to a valid antenuptial contract in writing, make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to be paid such sum as may be just and proper to effect a fair and just division thereof. The court may set apart a portion of the separate estate of a spouse to the other spouse for the support of the children of the marriage where custody resides with that spouse.

[16] Title 43 O.S. 2011 §121 provides in parts C-G:

C. A servicemember's portion of Special Monthly Compensation (SMC) awarded by or from the United States Department of Veterans Affairs for service-connected loss or loss of use of specific organs or extremities shall be separate property, not divisible as a marital asset nor as community property. For purposes of identifying SMC, it is the sole responsibility of the servicemember to prove with competent evidence what amount of his or her disability compensation is SMC.

D. A servicemember's portion of Combat-Related Special Compensation (CRSC) shall be separate property, not divisible as a marital asset nor as community property, if a specific dollar amount of CRSC can be proved by the servicemember as compensation for combat-related loss of limb or loss of bodily function and the CRSC award was applied for and established prior to the date of the filing of the dissolution of marriage action.

E. Pursuant to the federal Uniformed Services Former Spouses' Protection Act, 10 U.S.C., Section 1408, a court may treat disposable retired or retainer pay payable to a military member either as property solely of the member or as property of the member and the spouse of the member. If a state court determines that the disposable retired or retainer pay of a military member is the sole and separate property of the military member, the court shall submit clear and concise written findings of such determination to be included in the decree or final order. If a state court determines that the disposable retired or retainer pay of a military member is marital property, the court shall submit clear and concise written findings of such determination to be included in the decree or final order and shall award an amount consistent with the rank, pay grade, and time of service of the member at the date of the filing of the petition, unless the court finds a more equitable date due to the economic separation of the parties.

F. Unless otherwise agreed to by the parties, any division of an active duty military member's retirement or retainer pay shall use the following language:

"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying fifty percent (50%) times a fraction, the numerator of which is ____x____ months of marriage during the member's creditable military service, divided by the member's total number of months of creditable military service."

G. In the case of a member's retiring from reserve duty, unless otherwise agreed by the parties, any division of a reservist's retirement or retainer pay shall use the following language:

"The former spouse is awarded a percentage of the member's disposable military retired pay, to be computed by multiplying fifty percent (50%) times a fraction, the numerator of which is __X____reserve retirement points earned during the period of the marriage, divided by the member's total number of reserve retirement points earned."

[17] Tubbs v. State of Oklahoma ex rel. The Teachers' Retirement System of Oklahoma, see note 14, supra; Thielenhaus v. Thielenhaus, 1995 OK 5, 890 P.2d 925.

[18] Tubbs v. State of Oklahoma ex rel. The Teachers' Retirement System of Oklahoma, see note 14, supra; Rice v. Rice, 1988 OK 83, ¶8, 762 P.2d 925.

[19] The predecessor of 43 O.S. 2011 §121 before it was renumbered was 12 O.S. 1981 §1278.

[20] We note that the Court of Civil Appeals in Duty v. Duty, 2007 OK CIV APP 43, 162 P.3d 939 determined that unvested stock options obtained during marriage were marital property subject to division.

[21] Title 11 O.S. Supp. 2010 §49-126 provides in pertinent part:

B. . . .2. The term "qualified domestic order" means an order issued by a district court of this state pursuant to the domestic relation laws of this state which relates to the provision of marital property rights to an alternate payee and which creates or recognizes the existence of the right of an alternate payee and assigns to an alternate payee the right to receive a portion of the benefits payable with respect to a member of the System.

3. The term "alternate payee" means any spouse, former spouse, minor or disabled child or children, or other dependent of the member who is recognized by a domestic relations order as having a right to receive benefits payable with respect to a member of the System.

4. For purposes of the payment of marital property, to qualify as an alternate payee, a spouse or former spouse must have been married to the related member for a period of not less than thirty (30) continuous months immediately preceding the commencement of the proceedings from which the qualified domestic order issues.

5. A qualified domestic order is valid and binding on the State Board and the related member only if it meets the requirements of this subsection.

6. A qualified domestic order shall clearly specify:

a. the name and last-known mailing address (if any) of the member and the name and mailing address of the alternate payee covered by the order,

b. the amount or percentage of the member's benefits to be paid by the System to the alternate payee,

c. the number of payments or period to which such order applies,

d. the characterization of the benefit as to marital property rights or child support, and

e. each plan to which such order applies.

7. A qualified domestic order meets the requirements of this subsection only if such order:

a. does not require the System to provide any type or form of benefit, or any option not otherwise provided under state law as relates to the System,

b. does not require the System to provide increased benefits, and

c. does not require the payment of benefits to an alternate payee which are required to be paid to another alternate payee pursuant to another order previously determined to be a qualified domestic order or an order recognized by the System as a valid order prior to June 7, 1993.

8. A qualified domestic order shall not require payment of benefits to an alternate payee prior to the actual retirement date of the related member.

9. The alternate payee shall have a right to receive benefits payable to a member of the System under the Oklahoma Firefighters Deferred Option plan provided for pursuant to Section 49-106.1 of this title, but only to the extent such benefits have been credited or paid into the member's Oklahoma Firefighters Deferred Option Plan account during the term of the marriage.

10. The obligation of the System to pay an alternate payee pursuant to a qualified domestic order shall cease upon the earlier of the death of the related member or the death of the alternate payee. Upon the death of the alternate payee, the assignment to the alternate payee of the right to receive a portion of the benefits payable with respect to the member shall cease and the payments of benefits to the member shall be reinstated.

11. This subsection shall not be subject to the provisions of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. Section 1001, et seq., as amended from time to time, or rules and regulations promulgated thereunder, and court cases interpreting said act.

12. The Oklahoma Firefighters Pension and Retirement Board shall promulgate such rules as are necessary to implement the provisions of this subsection.

13. An alternate payee who has acquired beneficiary rights pursuant to a valid qualified domestic order must fully comply with all provisions of the rules promulgated by the State Board pursuant to this subsection in order to continue receiving his or her benefit.

C. The provisions of subsection A of this section shall not apply to a Child Support Enforcement Division order for a support arrearage pursuant to Section 240.23 of Title 56 of the Oklahoma Statutes and current child support payments made pursuant to a valid court order.

D. The provisions of subsection A of this section shall not apply to a federal tax levy made pursuant to Section 6331 of the Internal Revenue Code of 1986, as amended, and the collection by the United States on a judgment resulting from an unpaid tax assessment.

E. The provisions of subsection A of this section shall not apply in the case of an overpayment to a member or other payee. Such overpayment may be corrected through a return of the overpayment, or an adjustment of future payments, or a combination of these two methods, as approved by the State Board. The term "other payee" shall include, but not be limited to, alternate payees as defined in subsection B of this section, beneficiaries, designated recipients, and other individuals eligible to receive benefits pursuant to Section 49-113 of this title.

[22] Pulliam v. Pulliam, 114 A.3d 242, 254 (Md. App. 2015)[Years of service accumulated during marriage contributes to eligibility to participate in DROP and DROP benefits are subject to division even if not enrolled until after divorce.]; Pullo v. Pullo, 926 So.2d 448, 451 (Fla. 1st D.C.A. 2006) [Former wife entitled to portion of DROP account, even though former husband joined the DROP plan five years after the parties divorced.); Killingsworth v. Killingsworth, 925 So.2d 977, 982 (Ala. Civ. App. 2005) [Right to participate in DROP is part of vested benefits and DROP election does not change character of husband's retirement benefits nor result in a new post-divorce asset that was not subject to distribution in the divorce.]; Stavinoha v. Stavinoha, 126 S.W.3d 604, 612 (Tex. 14th D.C.A. Houston 2004) [Ex-wife is entitled to a percentage of the community interest in all of the disputed benefits credited to ex-husband's DROP account.]; Swanson v. Swanson, 869 So.2d 735, 738 (Fla. App. 4 Dist. 2004)[Portion of value of ex-husbands DROP benefits belong to the wife]; Smith v. Smith, 839 So.2d 1255, 1258 (La. App. 2 Cir. 2003) [Former wife entitled to share of former husband's deferred retirement option plan (DROP) funds which were attributable during the life of their community, even though former husband entered the DROP program after the parties divorced.]. In unpublished opinions, courts in Ohio and California have reached similar results. Collins v. Collins, 2015 WL 4899420 (Ct. App. Ohio 2015); In re Marriage of Ketaily, 2014 WL 5427534 (Ct. App. Cal. Dist. 6 2014).

[23] Baker v. Oklahoma Firefighters Pension and Retirement System, 1986 OK 8, ¶4, 718 P.2d 348.

[24] Tubbs v. State of Oklahoma ex rel. The Teachers' Retirement System of Oklahoma, see note 14 supra; Larman v. Larman, see note 14, supra.

[25] Title 43 O.S. 2011 §121, see note 15 supra.

[26] Tubbs v. State of Oklahoma ex rel. The Teachers' Retirement System of Oklahoma, see note 14, supra; Thielenhaus v. Thielenhaus, see note 17, supra.

 

 





 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Court of Civil Appeals Cases
 Cite
Name
Level

 2007 OK CIV APP 43, 162 P.3d 939, DUTY v. DUTY
Discussed
 2014 OK CIV APP 92, 340 P.3d 644, BALLINGER v. BALLINGER
Discussed at Length
Oklahoma Supreme Court Cases
 Cite
Name
Level

 1988 OK 83, 762 P.2d 925, 59 OBJ 1896, Rice v. Rice
Discussed
 1993 OK 112, 867 P.2d 438, 64 OBJ 2836, Hough v. Leonard
Cited
 1995 OK 5, 890 P.2d 925, 66 OBJ 338, Thielenhaus v. Thielenhaus
Discussed
 2002 OK 79, 57 P.3d 571, TUBBS v. STATE EX REL. TEACHERS' RETIREMENT SYSTEM
Discussed
 1999 OK 83, 991 P.2d 536, 70 OBJ 3260, Larman v. Larman
Discussed
 1983 OK 2, 657 P.2d 646, Carpenter v. Carpenter
Discussed at Length
 1986 OK 8, 718 P.2d 348, 57 OBJ 783, Baker v. Oklahoma Firefighters Pension and Retirement System
Discussed
Title 11. Cities and Towns
 Cite
Name
Level

 11 O.S. 49-106.1, Participation in Oklahoma Firefighters Deferred Option Plan
Discussed
 11 O.S. 49-126, Pensions and Allowances Exempt from Forced Sale - Not Assignable
Discussed at Length
 11 O.S. 49-101, Right to Pension - Amount - Report
Cited
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 1278, Renumbered as 43 O.S. § 121 by Laws 1989, SB 121, c. 333, § 1, eff. November 1, 1989
Discussed
Title 43. Marriage
 Cite
Name
Level

 43 O.S. 121, Restoration of Maiden or Former Name - Alimony - Property Division
Discussed at Length